# United States Court of Appeals for the Federal Circuit

———————————————

(Serial Nos. 77/147,075 & 77/975,745)

**IN RE THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA**

———————————————

2011-1330

———————————————

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

———————————————

Decided: April 3, 2012

———————————————

WILLIAM M. MERONE, Kenyon & Kenyon, LLP, of Washington, DC, argued for appellant. With him on the brief was EDWARD T. COLBERT.

CHRISTINA J. HIEBER, Associate Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With her on the brief were RAYMOND T. CHEN, Solicitor, and SYDNEY O. JOHNSON, JR., Associate Solicitor. Of counsel was THOMAS V. SHAW, Associate Solicitor.

———————————————

Before PROST, MAYER, and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge.*

The Chamber of Commerce of the United States of America ("COC") appeals the decision of the Trademark Trial and Appeal Board ("TTAB") finding that COC's service mark, NATIONAL CHAMBER, was correctly refused registration for being merely descriptive under 15 U.S.C. § 1052(e)(1). Because we find that substantial evidence supports the TTAB's finding of descriptiveness, we affirm.

## I. BACKGROUND

This appeal involves two related applications for COC's service mark NATIONAL CHAMBER. The two applications designate the services for which the mark would be used as follows (collectively, the "Subject Services"):

*Application Serial No. 77/147,075 ("the '075 application")*:

(1) "[p]roviding online directory information services featuring information regarding local and state Chambers of Commerce";[1]

---

[1] During prosecution, COC offered a disclaimer of any exclusive rights to the word CHAMBER apart from the composite mark NATIONAL CHAMBER, but only with respect to "providing online directory information services featuring information regarding local and state Chambers of Commerce." The Examining Attorney deemed this partial disclaimer improper, but that determination was not challenged before the TTAB. COC raises this issue only via a footnote on appeal to this court, and so the issue is waived. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[A]rguments raised in footnotes are not preserved.") (citing various cases).

(2) "providing information and news in the field of business, namely information and news on current events and on economic, legislative, and regulatory developments that can impact businesses"; and

(3) "administration of a discount program enabling participants to obtain discounts on goods and services."

*Application Serial No. 77/975,745 ("the '745 application")*:

(1) "analysis of governmental policy relating to businesses and analysis of regulatory activity relating to businesses, all for the purpose of promoting the interests of businessmen and businesswomen"; and

(2) *"*business data analysis."

The Subject Services are all within International Class 35, which generally encompasses advertising and business-related services.[2]

The United States Patent and Trademark Office refused registration of the NATIONAL CHAMBER mark

---

[2] Originally, the '075 application designated the service of "analysis of data, policy and regulatory activity" in International Class 45, which generally encompasses personal and social services. The '745 application was subsequently filed as a divisional application of the '075 application to separate out the International Class 45 services. The Examining Attorney later determined that the "analysis of data, policy and regulatory activity" service was improperly classified, and re-assigned it to International Class 35. The particular descriptions of the designated services in both applications were amended throughout prosecution to place them in their final forms listed above.

pursuant to Section 2(e)(1) of the Lanham Act (15 U.S.C. § 1052(e)(1)), which prohibits registration of any trademark which "when used on or in connection with the goods of the applicant is merely descriptive . . . of them . . . ." The Examining Attorney initially concluded that NATIONAL CHAMBER was merely descriptive because it "immediately imparts information about an important feature, function or purpose of the identified services." A51.[3] Unable to persuade the Examining Attorney to the contrary, COC appealed to the TTAB. Prior to taking up COC's appeal on the merits, the TTAB remanded twice to the Examining Attorney for further prosecution and development of the record. In the course of the remand proceedings, the Examining Attorney further explained the refusal was proper since NATIONAL describes "services that are nationwide in scope," and CHAMBER is descriptive of the services because it "illustrates the purposes of the services—promot[ing] the interests of businessmen and businesswomen," which "is a purpose common to chambers of commerce." A656-57.

On the merits, the TTAB affirmed the descriptiveness refusal, finding it "clear" that a consumer encountering the mark would "immediately understand NATIONAL CHAMBER, used in connection with applicant's services . . . as conveying information about them." A10-11. The TTAB relied explicitly on the following evidence to support its decision:

(1) A dictionary definition showing that the word "national" means "of, relating to, or belonging to a nation as an organized whole";

---

[3] Citations to "A___" herein refer to the Joint Appendix filed in this appeal.

    (2) A dictionary definition showing that the word "chamber" can refer to "a chamber of commerce";

    (3) Dictionary definitions showing that a "chamber of commerce" is an association of businesses and/or businesspersons for the promotion of commercial interests in a community; and

    (4) Printouts of COC's website showing its "directory" and "search" services for individuals seeking information about local and state chambers of commerce across the United States.

A5-6, A8-10. Based on this evidence, the TTAB concluded that "[i]t takes no mental leap to understand that applicant is using the mark for the services in both applications as a national chamber of commerce, whether promoting the interests of businesspersons or industry on a national level, or connecting local chambers of commerce through a nationwide network." A11. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

### A. The Law of Descriptiveness

"A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007) (citing *In re Gyulay*, 820 F.2d 1216, 1217 (Fed. Cir. 1987)). Whether a mark is descriptive cannot be determined in the abstract. *Id.* at 963-64. Descriptiveness must be evaluated "in relation to the particular goods for which registration is sought, the context in which it is

being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *Id.*

A descriptive mark can be registered if it has obtained "secondary meaning" or "acquired distinctiveness," whereby the mark has come to serve a trademark function of identifying a particular source of goods or services. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992); 15 U.S.C. § 1052(f) ("[N]othing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce."). To establish secondary meaning or acquired distinctiveness, an applicant must show that "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Labs., Inc. v. Ives Labs.*, 456 U.S. 844, 851 n.11 (1982). COC's applications in this case are based not on actual use in commerce, but on a *bona fide* intent to use the NATIONAL CHAMBER mark in connection with the Subject Services, pursuant to 15 U.S.C. § 1051(b). Accordingly, COC does not rely on any claim of secondary meaning or acquired distinctiveness to overcome the descriptiveness refusal, and we must analyze the mark to determine whether it is by its terms descriptive of the Subject Services based on the evidence of record.

A mark "need not recite each feature of the relevant goods or services in detail to be descriptive," it need only describe a single feature or attribute. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1346 (Fed. Cir. 2001) (holding that 1-888-M-A-T-T-R-E-S-S "immediately conveys the impressions that a service relating to mattresses is available by calling the telephone number"). Moreover, a mark need not be merely descriptive of all recited goods or services in an application. A descriptive-

ness refusal is proper "if the mark is descriptive of any of the [services] for which registration is sought." *In re Stereotaxis Inc.,* 429 F.3d 1039, 1041 (Fed. Cir. 2005) (citations omitted).

The TTAB's determination that a mark is merely descriptive is a factual finding which we review for substantial evidence. *Bayer,* 488 F.3d at 964. "Evidence that a term is merely descriptive to the relevant purchasing public may be obtained from any competent source, such as dictionaries, newspapers, or surveys." *Id.* (citation and internal quotation marks omitted). Evidence will be deemed substantial "if a reasonable person could find that the evidence is adequate to support the agency's finding." *In re Mighty Leaf Tea,* 601 F.3d 1342, 1346 (Fed. Cir. 2010).

### B. NATIONAL CHAMBER was Properly Refused Registration for Descriptiveness

We conclude that substantial evidence supports the TTAB's finding of descriptiveness. The dictionary definitions relied upon by the TTAB suggest that NATIONAL CHAMBER is a mark that might be viewed as descriptive of services that are nationwide in scope and relate to chambers of commerce. COC concedes that "national" means nationwide in scope and that "chamber" is commonly used to refer to a chamber of commerce, and COC does not dispute that a chamber of commerce generally serves to promote the interests of businesspersons in various ways. The government contends that all of the Subject Services are traditionally offered by chambers of commerce to promote business interests, and urges us to rule that NATIONAL CHAMBER is merely descriptive of any nationwide service that is within a broad genus of "chamber of commerce services." We decline to announce such an expansive general rule since descriptiveness is

determined with respect to the particularly recited services in an application, and must be supported by evidence that pertains to those particularly recited services. *See Bayer*, 488 F.3d at 963-64.

To decide this case, we need only find that NATIONAL CHAMBER immediately conveys information about one feature or characteristic of at least one of the designated services within each of COC's applications. *See Stereotaxis,* 429 F.3d at 1041 ("[R]egistration should be refused if the mark is descriptive of any of the goods for which registration is sought.") (quoting *In re Richardson Ink Co.*, 511 F.2d 559, 561 (CCPA 1975)). Because we find that NATIONAL CHAMBER describes at least one designated service within each of COC's applications, we affirm the descriptiveness refusals.

Regarding the '075 application, the TTAB cited printouts of COC's website showing its online service providing directory information for local and state chambers of commerce across the United States. NATIONAL CHAMBER is descriptive of such services, recited in the '075 application as "[p]roviding online directory information services featuring information regarding local and state Chambers of Commerce," since this service provides information to identify chambers of commerce nationwide. The descriptiveness refusal of the '075 application was therefore proper. *See Stereotaxis Inc.,* 429 F.3d at 1041.

The designated services of the '745 application are (1) "analysis of governmental policy relating to businesses and analysis of regulatory activity relating to businesses, all for the purpose of promoting the interests of businessmen and businesswomen"; and (2) "business data analysis." The record shows that chambers of commerce are organizations that promote the interests of businesspersons generally, and includes articles indicating that

chambers of commerce often engage in activities to help their members network with other businesspersons, become informed and involved in business-related legal and policy decisions by governments, and receive training and support to grow and retain business. On this record, substantial evidence supports the TTAB's determination that the designated business and regulatory data analysis services are within the scope of traditional chambers of commerce activities. We need not decide the descriptiveness issue on that basis alone, however, since NATIONAL CHAMBER also describes the expressly recited function of the former service listed in the '745 application—i.e., that the service is performed "for the purposes of promoting the interests of businessmen and businesswomen." *See Bayer*, 488 F.3d at 963 ("A term is merely descriptive if it immediately conveys knowledge of a quality, feature, *function*, or characteristic of the goods or services with which it is used.") (emphasis added); *Stereotaxis Inc.,* 429 F.3d at 1040-43 (affirming TTAB's finding that STEREOTAXIS was descriptive of certain magnetic medical devices and services because it described their functions and purposes—performing the "stereotaxis" brain surgery technique). We therefore find that the '745 application was properly refused for descriptiveness.

Lastly, we address COC's contention that the TTAB's reasoning was so conclusory as to preclude meaningful appellate review. We disagree with COC that the TTAB's necessary findings were not "expressed with sufficient particularity to enable our court, without resort to speculation, to understand the reasoning of the Board, and to determine whether it applied the law correctly and whether the evidence supported the underlying and ultimate fact findings." COC Br. at 15 (quoting *Gechter v. Davidson*, 116 F.3d 1454, 1457-58 (Fed. Cir. 1997)) (alteration removed). The TTAB specifically cited COC's

own online chambers of commerce directory, and expressly found that the promotion of business interests is the core function of a chamber of commerce. While the TTAB's decision would have been more helpful to us had it more explicitly tied its particular evidentiary findings to the individually recited services within the two applications, its reasoning in this case is sufficiently clear to permit us to understand why it believed that NATIONAL CHAMBER was descriptive of at least the two services discussed above. *See* A11 ("It takes no mental leap to understand that applicant is using the mark for the services in both applications as a national chamber of commerce, whether promoting the interests of businesspersons or industry on a national level, or connecting local chambers of commerce through a nationwide network."). This case does not present the kinds of critical omissions that were present in *Gechter*, a patent case, where "the Board's opinion lack[ed] a claim construction, ma[de] conclusory findings relating to anticipation, and omit[ted] any analysis on several limitations." 116 F.3d at 1460. In any event, as an appellate tribunal, "we sit to review judgments, not opinions," *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983), and in this case the judgment of the TTAB is supported by substantial evidence.

### III.    CONCLUSION

For the foregoing reasons, the judgment of the TTAB is

**AFFIRMED**