**THIS OPINION IS A PRECEDENT**
**OF**
**THE T.T.A.B.**

Mailed: July 12, 2013

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re AOP LLC
————————

Serial No. 85009094

————————

David E Weslow of Wiley Rein LLP, for AOP LLC.

Edward Fennessy, Trademark Examining Attorney, Law Office 114 (K. Margaret Le, Managing Attorney).

————————

Before Quinn, Kuhlke, and Ritchie,
Administrative Trademark Judges.

Opinion by Ritchie, Administrative Trademark Judge:

AOP LLC ("applicant") filed an application to register on the Principal Register the mark AOP in standard characters for "wine" in International Class 33.[1] The

---

[1] The application was filed April 8, 2010, under Section 44(d) based on a prior Canadian application. The examining attorney has noted that multiple parties have filed oppositions to the Canadian application, including the European Commission on behalf of the European Community (Brief, note 8). On February 7, 2011, applicant filed an Amendment to Allege Use (AAU) and withdrew its basis under Section 44. The Office entered the AAU, amending the application to one made pursuant to 15 U.S.C. § 1051(a), alleging dates of first use on March 28, 2008, and first use in commerce on November 12, 2009. The application was filed by Julia Wine Inc., a Canadian corporation. The assignment to AOP LLC, a

examining attorney has refused registration of the application on five grounds. The examining attorney refused registration under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. § 1052(a), on the ground that the mark sought to be registered is deceptive in relation to the identified goods. The examining attorney additionally refused registration on the ground that the mark is deceptively misdescriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), or alternatively is merely descriptive thereof under the same statutory provision. The examining attorney issued a fourth ground for refusal that the mark fails to function as a trademark, because, as used on the specimen of record, it is merely informational matter pursuant to Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051-1052, 1127. Finally, the examining attorney refused registration on the ground that applicant did not adequately respond to, or comply with, a request for information concerning its goods, specifically an inquiry as to whether the goods "originate in Europe" and "whether the mark AOP indicates a type and/or grade of applicant's goods." 37 C.F.R. § 2.61(b).

---

United States corporation executed on March 9, 2011 is recorded at Reel/Frame 4497/0470.

When all of the refusals were made final, applicant filed an appeal. Applicant and the examining attorney each filed briefs, and applicant filed a reply brief. We address each of the refusals in turn.

## 2(a) Deceptiveness

In accordance with Section 2(a) of the Trademark Act, registration must be refused if a mark is deceptive in relation to the identified goods. The Office has the initial burden of putting forth a prima facie case that a trademark falls within the prohibition of Section 2(a). *In re Budge*, 857 F.2d 773, 8 USPQ2d 1259, 1260 (Fed. Cir. 1988) (LOVEE LAMB deceptive for "automotive seat covers"). The test for deceptiveness is: 1) whether the mark misdescribes the goods; 2) if so, whether consumers would be likely to believe the misrepresentation; and 3) whether the misrepresentation would materially affect potential purchasers' decisions to purchase the product. *Id.* at 1260. *See also In re California Innovations, Inc.*, 329 F.3d 1334, 66 USPQ2d 1853, 1854 (Fed. Cir. 2003); *In re E5 LLC*, 103 USPQ2d 1578 (TTAB 2012); *In re White Jasmine LLC*, 106 USPQ2d 1385 (TTAB 2013).

In looking at the first element, we must decide whether the term "AOP" misdescribes applicant's "wine," the goods for which applicant seeks registration. The

examining attorney contends that consumers will understand the term "AOP" to refer to the European regulatory system for designating the quality and origin of wine, and use of the initialism would misdescribe applicant's "wine," if not of such quality and origin.  In support of the refusal, the examining attorney submitted a significant amount of evidence to show that "AOP" is a term used by members of the European Union [EU], to designate a particular quality and geographical origin of wine.  The following is representative:

> What does AOP stand for?: Appellation d'Origine Protégée (French & European protection of geographic products).
> *www.acronymfinder.com.*  Attached to March 15, 2011 Office Action, p. 2.
>
> Google translate: Appellation d'Origine Protégée = Protected Designation of Origin.
> *google.translate.com.*  Attached to March 15, 2011 Office Action, p. 4.
>
> French Wine Classification: AOC (Appellation d'origine Contrôlée): An AOC classification acts as a consumer guarantee that a wine is of a particular quality, and, generally, of a particular style.  It also states that the wine has been made in a designated area, in accordance with local wine production laws and regulations. AOP (Appellation d'Origine Protégee): the European-wide equivalent of the French national-level AOC.
> *www.wine-searcher.com.*  Attached to March 15, 2011 Office Action, p. 5.
>
> *www.wine-searcher.com.*  Attached to March 15, 2011 Office Action, p. 9 [image below, with the use of AOP highlighted in dark blue]:

4



http://www.wine-searcher.com/find/j+lauren+blanquette+de+limoux+brut+le+moulin+aop+sparkling
03/04/2011 11:44:47 AM

Good riddance AOCs, hello AOPs: Look closely at your next bottle of rosé, and you'll notice your favorite summer thirst-quencher is different this year.  It's probably labeled Appellation d'Origine Protégée or Indication Géographique Protégée.  This is good news for wine lovers. *http://jonathonhealey.blogspot.com.*  Attached to March 15, 2011 Office Action, p. 21.

The French AOC (Appellation d'Origine Contrôlée) label will shortly be replaced by the European AOP (Appellation d'Origine Protégée) label.  However, these two labels have the exact same function – to enable customers to recognize high-quality products from a guaranteed region of origin.

*http://uk.franceguide.com*.  Attached to October 31, 2011 Office Action, p. 2.

Understanding the Label: Appellation d'Origine Contrôlée/Appellation d'Origine Protégée (AOC/AOP) The European AOP classification is in the process of replacing the old French AOC classification, following a European ruling in 2009.  The terms are most frequently used in the classification of wines, but more recently has been extended to act as a label of quality and authenticity for certain regional and local specialties, including cheeses. *http://about-france.com*.  Attached to March 15, 2011 Office Action, p. 33.

*Globalwinespirits.com*.  Attached to October 31, 2011 Office Action, p. 5 [image below, with use of AOP highlighted in dark blue]:

http://www.globalwinespirits.com/catalog.WINE/Tradition+Blanc+-+C%F4tes+du+Rh%F4ne/32044094/AURE0082-en.jsa
10/15/2011 03:57:53 PM



Article 2: Products Concerned: This competition is open only for wines produced from grapes that have

been certified as being organically grown and
belonging to one of the following categories:
Wines from non-specific geographic locations (vins
sans IG)
Vintage-dated with official quality status
specification (AOP and IGP)
*www.millesime.com*.  Attached to October 31, 2011
Office Action, p. 124.

The new laws will feature three quality tiers:
AOP (Appellation d'Origine Protégée).  Besides
the name change from AOC, virtually nothing else
has changed.  All of the stringent AOC
requirements remain in place.  The singular focus
on terroir continues to be on designation.
*www.bettyswinemusings.com*.  Attached to October
31, 2011 Office Action, p. 127.

Applicant admits that "The AOP mark is a coined
initialism for APPELLATION D'ORIGINE PROTEGEE."  (Response
to Office Action September 15, 2011).[2]  Accordingly, there
is no dispute as to the definition of the term.  Neither
does applicant dispute that the European Union devised the
term "AOP" for use in the manner discussed by the evidence.
(appl's brief at 2).  However, applicant argues, via a
declaration from Joel Butler, dated April 29, 2012,
submitted with its response to an Office action, that U.S.
consumers will not be aware of the significance of the EU
designation "AOP."  Mr. Butler states that his comments are

---

[2] The examining attorney further submitted evidence of another
application filed by applicant for the term AOP APPELLATION
D'ORIGINE PROTEGEE for, among other things, "wines;" Application
Serial No. 85421063.  A check of Office records shows that the
application was abandoned on June 13, 2012 for failure to timely
respond to an Office action.

made "based on my training as a Master of Wine and my extensive experience in the United States and international wine industries." (Butler decl. Para. 1). According to Mr. Butler's declaration, "U.S. wine consumers generally do not understand AOP or Appellation d'Origine Protégée to describe 'wines from Europe that are of a particular quality and type.'" *Id.* at Para 10. He says this is because "the European Union's designation is not yet mandatory and therefore does not appear on most European wines distributed in the United States," because "AOP is a French-based acronym," and because "most U.S. wine consumers do not understand European designations of origin." *Id.* at para. 11.

We find Mr. Butler's statements to be belied by the substantial evidence submitted by the examining attorney. There are numerous examples in the record of widely-available websites, connected to generic top-level domains. We can only assume that U.S. consumers are exposed to those websites and have the same perceptions of them as any other consumers, particularly as the evidence frequently shows the designation "AOP" listed with English-language discussions of the European designation of quality and

origin.[3]

The record contains substantial evidence that, indeed, "AOP" is the designation employed by the European regulatory system outlined by the examining attorney, including the following further evidence:

> New EU wine regulations in force: The European Union's new wine regulations have come into force, ushering in a new era for the European wine industry.
> [*Correction[:] in this article we say 'The French AOC becomes AOP', implying that AOC is going to disappear. That is not the case. AOP is a protection granted at the European level to a wider range of consumer products; it reforms some of the barriers formerly imposed by AOC, without replacing it.*] *Decanter.com*. Attached to June 19, 2012 Office Action, p. 44.

> We Study Wine: Map of France's A.O.P. Wine Regions; Labels: AOP, France, France Wine Regions Map, Map.
> *http://westudywine.blogspot.com*. Attached to June 19, 2012 Office Action, p. 47.

Moreover, the evidence shows that consumers, through websites, are exposed through websites to bottles of wine with the AOP designation. Indeed, some of the above web postings, including some blogs, appear to be particularly prepared for, or at least directed to, U.S. consumers; and the following example is a listing of drinks served by

---

[3] In making this finding, we exclude from our consideration submissions from the examining attorney made in languages other than English, and repetitive submissions. *Cf. In re Bayer AG,* 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir. 2007) (finding U.S. scientific researchers more likely to peruse foreign websites in English).

United airlines:

    United BusinessFirst ® long-haul flights

    Champagnes
    . . . .
    Champagne PANNIER "Tradition" AOP Champagne White
    Brut NV

    Red wines
    . . . .
    Domaine Santa Duc AOP Cotes du Rhone Villages
    Cairanne "Les Buissons" 2010

    *www.united.com*. Attached to October 31, 2011
    Office Action, p. 145.

The record establishes that AOP is a designation of
origin used by the European Union. Applicant is not the
entity that administers the AOP and has admitted that
"[a]pplicant's goods do not necessarily originate in
Europe." (September 15, 2011 Response to Office Action).[4]
Accordingly, we find that applicant's mark misdescribes its
product, and this first element of the test for
deceptiveness is satisfied.

For the second prong of the deceptiveness analysis, we
ask whether consumers are likely to believe that the
misdescription actually describes the goods. Again, we
note applicant's arguments that U.S. consumers are not
exposed to the European regulatory system which sets forth

---

[4] Indeed, the specimens applicant submitted (displayed *infra* at
pp. 20-21) depict wines that indicate they originate in the USA.

the "AOP" designation for quality and origin of wine. However, as shown above, U.S. consumers have been exposed to listings and descriptions of wine that include designations of origin, including the AOP. Further, the websites submitted into evidence are widely available to U.S. consumers, and would likely be perceived by them as persuasive. This includes, as set forth above, definitions of "AOP" with translation as "protected designation of origin," and numerous online discussions by bloggers and wine-related websites of "AOP" as being a term defined as a European and French classification for wines of certain quality and origin. Since applicant is applying to register wine in particular, we find that consumers would believe that applicant's misdescription describes its goods.

Finally, we ask whether the misdescription is material to consumers' decision to purchase the goods. *See In re Budge*, 8 USPQ2d at 1260; *In re E5 LLC,* 103 USPQ2d at 1583. We note that with a designation of quality and origin, it is natural that a substantial proportion of consumers of wine would be interested in the AOP designation. Indeed, the foregoing website evidence discussing the significance of the designation illustrates consumer interest. Thus, we conclude that use of the AOP designation would affect the

11

purchasing decision.  The web evidence set forth above

confirms that bloggers and wine aficionados alike are

keenly aware of the European and French AOP designation,

and consider it to be material to consumers.  Further

evidence includes the following:

> End of AOC?: France decided to simplify their
> system of wine classification . . . . The project
> presented to the ministers divides wines in three
> categories:
> Appellation d'Origine Protégée (AOP) – wine
> produced in a traditional way with a strong
> respect of terroir.
> *www.vinaspora.com*.  Attached to June 19, 2012
> Office Action, p.65.

Even applicant appears to tout the use of "an AOP" to

market wines:

> Change the way of buying wine.  We at AOP LLC,
> have developed an AOP: APPELLATION D'ORIGINE
> PROTEGEE.  A prestigious brand of quality and
> identification for the wine industry which also
> allows for the consumer to connect with this
> brand buy [sic] using an AOP application for the
> iPhone.  *www.aopwine.com*.  Attached to June 19,
> 2012 Office Action, p.10.

Accordingly, we find the misdescription to be

material.[5]

With the three prongs satisfied, we find applicant's

AOP mark to be deceptive within the meaning of Section

---

[5] As discussed infra, we also affirm, among other things, an
alternative misdescriptiveness refusal under Section 2(e)(1).
Subsumed in our finding that the mark is deceptive is a finding
that it is misdescriptive.

2(a).[6]

## Requirement for Further Information

In view of the established meaning of AOP in relation to wine, the examining attorney required applicant to "indicate for the record whether applicant's goods originate in Europe." The examining attorney further required that "[a]pplicant must also indicate whether the mark indicates a type and/or grade of applicant's goods, whether applicant's goods are of the particular regional origin or quality established for use of the AOP, and whether applicant's goods have been certified to meet the corresponding standards for this designation by the appropriate regulatory body." 37 C.F.R. § 2.61(b). Applicant, in its September 15, 2011 Response to an earlier Office Action, responded in an evasive manner, in our view. As to the geographic origin, applicant stated, "[a]pplicant's goods do not necessarily originate in Europe." Regarding quality, applicant stated "[a]ll goods on which Applicant authorizes use of its AOP mark have been deemed by Applicant to meet its high standards for quality, craftsmanship, and satisfaction of all applicable rules and

---

[6] Applicant claims, in its September 15, 2011 Response to Office Action, that it is the "senior user." Priority of trademark use cannot overcome a deceptiveness refusal.

regulations pertaining to the origin and authenticity of the wine."

In the final Office action, dated October 31, 2011, the examining attorney noted that applicant's response was vague and insufficient. Once again, the examining attorney required applicant to "indicate for the record whether applicant's goods originate in Europe" as well as to indicate "whether the mark AOP indicates a type and/or grade of applicant's goods, whether applicant's goods are of the particular regional quality established for use of the AOP by the European Union, and whether applicant's goods have been certified to meet the corresponding standards for this designation by the appropriate European regulatory body."

Applicant reiterated in its Request for Reconsideration dated April 30, 2012, that while "[a]pplicant's goods do not all originate in Europe," applicant "has no reason to seek certification by a European regulatory body."

While applicant does not address this issue in its brief, the examining attorney maintains that the responses are "not responsive to the questions posed and are not sufficiently clear to facilitate a proper examination of the application." E. A. Br. p. 28.

14

Failure to comply with a request for information is grounds for refusal of registration. *In re Cheezwhse.com Inc.*, 85 USPQ2d 1917, 1919 (TTAB 2008); *In re DTI Partnership LLP*, 67 USPQ2d 1699, 1701 (TTAB 2003); TMEP § 814. In view of applicant's equivocal responses (not to mention its complete silence on this point in its brief), we find that applicant has not complied with the requirement for more specific information.

## Section 2(e)(1)

We next consider the refusals as to whether applicant's mark is merely descriptive, or alternatively deceptively misdescriptive of its identified goods, under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). Because applicant has inexcusably failed to comply with the information requirement, to the extent there is any ambiguity regarding the origin and certification of applicant's goods we address both refusals in the alternative based on the presumption that had applicant directly and fully responded to the examining attorney's inquiries, the responses would have been unfavorable. *See Cheezswhse.com*, 85 USPQ2d at 1919. Specifically, if applicant's wines are AOP-certified then applicant would know this and the use of the term AOP would be known by applicant to be merely descriptive of the

15

wines, and if the wines are not so certified, then the term is deceptively misdescriptive, and applicant is presumed to know this.

A term is merely descriptive if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used. *See In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012), *citing In re Gyulay*, 820 F.2d 1216, 1217, 3 USPQ2d 1009 (Fed. Cir. 1987). Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use. That a term may have other meanings in different contexts is not controlling. *In re Bright-Crest, Ltd*., 204 USPQ 591, 593 (TTAB 1979). Moreover, it is settled that "[t]he question is not whether someone presented with only the mark could guess what the goods or services are. Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them." *In re Tower Tech Inc*., 64 USPQ2d 1314, 1316-17 (TTAB 2002);

*See also In re Patent & Trademark Services Inc.*, 49 USPQ2d 1537 (TTAB 1998); *In re Home Builders Association of Greenville*, 18 USPQ2d 1313 (TTAB 1990); and *In re American Greetings Corporation*, 226 USPQ 365 (TTAB 1985).

On the other hand, a mark is considered deceptively misdescriptive if (i) the mark *misdescribes* a quality, feature, function, or characteristic of the goods or services with which it is used; and (ii) consumers would be likely to believe the misrepresentation. *See In re White Jasmine*, 106 USPQ2d at 1394 (applied-for mark refers to feature of applied-for tea); *In re Quady Winery, Inc.*, 221 USPQ 1213 (TTAB 1984) (applied-for mark refers to feature of applied-for wine); TMEP § 1209.04.

As set forth above, it is clear from the evidence of record, as well as from applicant's own admissions, that the term "AOP" is an acronym used to refer to "appellation d'origine protégée," which translates from French as "protected designation of origin."[7]  *See* definition and

---

[7] The foreign equivalent of an English word is generally no more registrable than the English term under the doctrine of foreign equivalents.  *See In re Spirits Intl, N.V.,* 563 F.3d 1347, 90 USPQ2d 1489, 1492 (Fed. Cir. 2009); *Palm Bay Imps, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1696 (Fed. Cir. 2005).  We note, however, that we do not view this case as falling within the doctrine of foreign equivalents inasmuch as consumers will simply understand the abbreviation as an indication of origin and quality without knowing the exact foreign wording from which it is derived or the translation thereof.

translation, *supra.* It is also clear from the web evidence that the term is understood by consumers of wine as a designation used in Europe and in France as a designation of quality and origin for wine. Indeed, it is inherent in the term "protected designation of origin" that consumers would understand it to describe a feature or function of the "wine" for which applicant seeks registration. Applicant touts this feature on its website:



The text on the above website reads as follows:

AOP APPELLATION D'ORIGINE PROTEGEE
Wines marketed under our prestigious international brand AOP APPELLATION D'ORIGINE PROTEGEE are subject to much tighter controls. The product label should include an Electronic stamp: AOP APPELLATION D'ORIGINE PROTEGEE issued by AOP LLC, which guarantees the origin and authenticity of the wine. Bottled quantities and dates of production must also be held in a very accurate record kept by the producer or supplier.

18

> *www.aopwine.com*. Attached to June 19, 2012
> office Action.

As such, applicant is trying to influence consumers with its own product labeling system under the term "AOP." Since, as shown by the evidence of record, the term "AOP" is known to consumers to describe a European and French system for indicating the quality and geographic origin of certain wines, it is likely that consumers would understand applicant's use of the term "AOP" to describe that system. *See In re Quady Winery Inc.*, 221 USPQ at 1214 ("The fact that there may be a relatively small number of prospective purchasers who are knowledgeable of the original . . . is not determinative. Even if the group would not be large, it is still the proper universe for our consideration."). Thus, if applicant's wine is AOP certified by and under the European regulatory system, the proposed mark is merely descriptive of a significant feature of the goods.

Further, if applicant's wine is not AOP certified by and under the European regulatory system, the proposed mark misdescribes a significant feature of applicant's wine and, as found above in relation to the Section 2(a) refusal, consumers would be likely to believe the misrepresentation. Thus, the proposed mark is, in the alternative, deceptively misdescriptive of the goods.

### Specimen Refusal

Finally, we address the refusal on the ground that the mark fails to function as a trademark, because, as used on the specimen of record, it is merely informational matter. Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051-1052, 1127.  Applicant submitted a specimen of use on February 7, 2011, as shown below [displaying AOP on the label]:



Upon receiving the refusal to register, applicant submitted a substitute specimen of use on September 29, 2011, as shown below [again, showing AOP on the label]:



We look to the specimens to see if they convey use as a mark. Matter that is merely informational is not registrable as a mark. *See In re T.S. Designs, Inc.*, 95 USPQ2d 1669 (TTAB 2010) (holding CLOTHING FACTS merely informational and not a source identifier based on likely consumer perception); *In re Volvo Cars of N. America, Inc.*,

46 USPQ2d 1455 (TTAB 1998) (holding DRIVE SAFELY merely information and likely perceived a commonplace safety advice). The question, then, is whether the specimens submitted show the applied-for mark used in a source-identifying manner, or rather in a manner that simply conveys information to the consumer.

In the first submitted specimen, the term "AOP" appears at the bottom of the label, directly below the phrase "Product of the USA" and above the phrase "14.7% ALC/VOL." Set in the midst of other clearly informational matter, and far from the mark naming the wine itself, this use of the term "AOP" does indeed convey nothing more than information itself and would not likely be perceived as a mark. In the substitute specimen, the term "AOP" appears again far from the name of the wine. Again it appears amongst and between other informational matter, "CELLIER AOP No. 3" which translates as "Cellar AOP No. 3." (*www.babylon.com*). The other items set forth on this side of the wine label, clearly separate from the mark "Julia," are also informational, with French/English translations "International wine negotiant" and "New World Wine/Product of USA." Indeed, as noted above, applicant itself refers to its use of "an AOP" as reflecting a "quality and identification for the wine industry." *www.aopwine.com*. Attached to June 19, 2012 Office Action, p. 10. Applicant's website further states, regarding the AOP term: "The product label should include an 'Electronic

22

stamp: AOP APPELLATION D'ORIGINE PROTEGEE issued by AOP LLC, which guarantees the origin and authenticity of the wine." Applicant also stated in its September 15, 2011 Response to an earlier Office Action that goods labeled under its "AOP" designation "have been deemed by Applicant to meet its high standards for quality, craftsmanship, and satisfaction of all applicable rules and regulations pertaining to the origin and authenticity of the wine." These excerpts present the term in an informational manner to inform consumers about a certification process rather than as a source identifier. In short, it is likely to be perceived as informational.

We find that consumers of wine would perceive the term "AOP," as set forth on both specimens, as being merely informational and not source-identifying. This refusal is affirmed as well.

**Decision: All of the refusals to register are affirmed, and registration to applicant is refused.**