> **This Opinion is a
> Precedent of the TTAB**

Hearing: January 10, 2017                    Mailed: June 7, 2017

## UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Well Living Lab Inc.*

———

Serial No. 86440401

———

Lyndsey Waddington and Paul J. Vincenti, Vincenti & Vincenti, P.C. for Well
Living Lab Inc.

Chrisie Brightmire King, Trademark Examining Attorney, Law Office 109,
Michael Kazazian, Managing Attorney.

———

Before Wellington, Wolfson and Gorowitz,
Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Well Living Lab Inc. ("Applicant") seeks registration on the Principal Register of

the mark WELL LIVING LAB (in standard characters)[1] for

> Scientific research in the field of human health and
> wellness in indoor environments; product testing, research

---

[1] The mark appears in the drawing as "WELL Living Lab," but we depict it here as WELL
LIVING LAB (without regard to style) because Applicant seeks registration of its mark in
standard characters, thus making no claim to any particular font style, size or color.
Trademark Rule 2.52(a); 37 C.F.R. 2.52(a); *In re Calphalon Corp.*, 122 USPQ2d 1153, 1154
n.1 (TTAB 2017); *In re Star Belly Stitcher, Inc.*, 107 USPQ2d 2059, 2059 n.1 (TTAB 2013);
*see also* Trademark Manual of Examining Procedure ("TMEP") § 807.03 (Jan. 2017).

and development designed to improve the health and well-being of product users; design and testing for new product development for others in the field of health and wellness; testing, research and development of products designed to improve the health and wellness of individual users; product testing, research and development relating to technology designed to monitor and control environmental characteristics of buildings and indoor spaces; accreditation services, namely, developing protocols and evaluating and testing conformance to protocols for products designed to improve the health and wellness of individual users

in International Class 42.[2]

The Trademark Examining Attorney refused registration on the ground that the mark is merely descriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1). After the Examining Attorney made the refusal final, Applicant appealed, and Applicant and the Examining Attorney filed appeal briefs. An oral hearing was held on January 10, 2017.[3] We affirm the refusal to register.

---

[2] Application Serial No. 86440401 was filed October 30, 2014 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), alleging a bona fide intention to use the mark in commerce. On November 9, 2015, Delos Living, LLC assigned the application to Applicant. The assignment is recorded at Reel/Frame 5666/0447. On March 8, 2017, the Board restored jurisdiction to the Examining Attorney for a determination of compliance with Trademark Act Section 10. 16 TTABVUE. The Examining Attorney issued an Examiner's Amendment on March 9, 2017, accepting Applicant's statement that the assignment was in compliance with Section 10 and that Applicant is "a successor to and is operating a portion of the business to which the mark pertains." 17 TTABVUE.

[3] On January 13, 2017, Applicant filed a supplemental brief after oral hearing. Amended Trademark Rule 2.142(b)(2), effective January 14, 2017, sets forth the allowable page limits for an applicant's brief and reply brief and provides that "unless authorized by the Board, no further briefs are permitted." While the new rules were not in effect on January 13, 2017, the prior rules also did not provide for the filing of a supplemental brief by an applicant in an *ex parte* proceeding. Accordingly, we have not considered Applicant's supplemental brief. *Cf.* Trademark Rule 2.127(a) (Board does not consider surreply briefs in support of or in

The Examining Attorney maintains that the proposed mark is merely descriptive of Applicant's research services in the field of human health and wellness in indoor environments. Specifically, the Examining Attorney contends that the phrase "well living" is commonly used to refer to health and wellness and the term "lab" is an abbreviation for laboratory, which is a place for conducting research. "Therefore, it will be demonstrated that the combination WELL LIVING LAB merely describes the applicant's services, i.e., a scientific, research or manufacturing laboratory that conducts research in the area of well living/health and wellness."[4] In support, the Examining Attorney relies on dictionary definitions and excerpts of third-party websites.

Applicant, on the other hand, argues that its proposed mark is suggestive, and not merely descriptive. More specifically, Applicant contends that WELL LIVING LAB suggests services "with a possible, aspirational result, thus requiring imagination and perception on the part of consumers."[5] Applicant further argues that the mark presents an incongruity in that the "unusual and incongruous combination of the words 'well,' 'living,' and 'lab' certainly forces consumers to take a 'mental pause' to grasp the import of the Applicant's mark, thus rendering the mark, at the very least, suggestive."[6]

---

opposition to a motion); TBMP § 539 (Surreply or rejoinder brief given no consideration in *inter partes* case).

[4] Examiner's Statement, 7 TTABVUE 4.

[5] Appeal Brief, 4 TTABVUE 10.

[6] *Id.*

A term is merely descriptive of goods or services within the meaning of Section 2(e)(1) if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012). *See also In re Bayer Aktiengesellschaft,* 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007); *In re Gyulay,* 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987). Whether a mark is merely descriptive is determined in relation to the goods or services for which registration is sought and the context in which the term is used or intended to be used, not in the abstract or on the basis of guesswork. *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215, 218 (CCPA 1978); *In re Remacle*, 66 USPQ2d 1222, 1224 (TTAB 2002). A term need not immediately convey an idea of each and every specific feature of the goods or services in order to be considered merely descriptive; it is enough if it describes one significant attribute, function or property of them. *See In re Gyulay,* 3 USPQ2d at 1010*; In re H.U.D.D.L.E.*, 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). The analysis requires consideration of the possible significance that the mark would have to the average purchaser of the identified goods or services in the relevant marketplace. *In re Chamber of Commerce,* 102 USPQ2d at 1219; *Bayer,* 82 USPQ2d at 1831; *Abcor*, 200 USPQ at 218. The analysis assumes that the consumer knows what the goods or services are, and asks if such consumer will understand the mark to convey information about them. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695

F. 3d 1247, 1254, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012), quoting *In re Tower Tech. Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002).

In determining the overall meaning for the composite mark WELL LIVING LAB, while we consider the issue with respect to the impression made by the mark as a whole, we may preliminarily consider the meanings of any separate words or phrases. *See, e.g., In re Oppedahl & Larson LLP*, 373 F.3d 1171, 1174, 71 USPQ2d 1372 (Fed. Cir. 2004). Thus, we note that the word "lab" is defined as an abbreviation for the word "laboratory," which means: "A room or building equipped for scientific experiments, research, or teaching, or for the manufacture of drugs or chemicals."[7] Usage examples from the Oxford dictionary definition of "lab" include "a science lab," "a medical lab," and "forensic labs."[8] Applicant's services include "testing, research and development of products designed to improve the health and wellness of individual users." As the dictionary definitions and usage examples illustrate, such activities are typically conducted in a room or building expressly designed for experimentation, where monitoring and control of conditions are of paramount importance. Accordingly, we find that the term "lab" refers to the location where

---

[7] At http://www.oxforddictionaries.com/us/definition/american_english/laboratory, accessed 02/25/2015, attached to Office Action of February 25, 2015, p. 17.

[8] At http://www.oxforddictionaries.com/us/definition/american_english/lab, accessed 02/25/2015, attached to Office Action of February 25, 2015, p.14. The attached page lists "science lab" as an example, and shows a link to "more example sentences." We take judicial notice of the additional usage examples provided by expansion of that link. *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

Applicant's research services take place and is at best merely descriptive, if not generic, for the services.

Regarding the meaning of the term "well living," Applicant submitted the following definitions from the Oxford Dictionary with its final brief: 1) *Noun* "the action or fact of leading a good life, especially with respect to moral virtue" and 2) *Adjective* "designating a person who leads a virtuous or (in later use) comfortable life."[9] The dictionary references as submitted include a comment that this sense of the term is "Now somewhat archaic," but the record does not explain the significance of "somewhat archaic." While we have given the definitions some evidentiary weight and agree with Applicant that some consumers may be aware of the meaning of the term as designating a virtuous or comfortable lifestyle, the following excerpts, submitted by the Examining Attorney from ten third-party websites, tend to show that there is a more modern meaning attached to the phrase "well-living" that supports the Examining Attorney's contention that "well-living" has essentially the same descriptive meaning as "health and wellness:"

1. HealthyFit offers a corporate wellness program "for well-living." This website describes a program that a company may use to help its employees stay healthy, "bring healthy ideals to the workplace culture and track milestones as we go." At https:/www.healthyfit.com, February 25, 2015 Office Action p. 5.

2. NIFS for Fitness (National Institute for Fitness and Sport) posts an article entitled "Corporate Fitness and Active Aging, Two Key Things Your Wellness

---

[9] At www.oxforddictionaries.com/us/definition/american_english/well-living?q=well+living, accessed February 18, 2016, attached as Exhibit A to Applicant's brief. Judicial notice may be taken of dictionary evidence, including definitions that are the electronic equivalent of a print reference work. *Univ. of Notre Dame du Lac v. J. C. Gourmet Food Imps. Co.,* 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

program May Be Missing." It urges employers to provide wellness services to provide "opportunities for the well-living of employees." At http://wellness.nifs.org, February 25, 2015 Office Action p. 6.

3. Elizabeth Carpenter's Oriens Living advertises a nutrition program designed to build one's health, the "best anti-aging and well-living investment you can make." At http://oriensliving.com, attached to February 25, 2015 Office Action p. 10.

4. The Spa Association offers "SpaLiving," a podcast/radio program exploring topics in spa and wellness, including a nutrition podcast. "Tune in to find out how you can join the club of those … embracing well-living." At http://www.thespaassociation.com, attached to February 25, 2015 Office Action p. 13.

5. Welloria offers a membership program that provides online information regarding health, fitness, diet and financial issues, including a personal coaching program for its subscribers. One of its taglines is "Welcome to Welloria–the well living lifestyle." At http://www.welloria.com, attached to February 25, 2015 Office Action p. 16.

6. Avera offers home medical equipment and assistance with its management. "We look forward to assisting with all of your home medical and well-living needs." At www.avera.org, July 2, 2015 Office Action p. 5.

7. Re-freshed contains an article about making "new life habits that lead us to well-living." The "tiny habits" discussed in the article assist adherents in developing "a healthy habit as a natural part of their lifestyle." At mowerrefreshed.org, July 2, 2015 Office Action p. 7.

8. Nutr 360, in a post entitled "The Key to Well Living," advertises a curriculum workshop series that includes six session topics, one of which is "Physical Activity is Key to Well Living." The content of the curriculum is described as covering "a broad range of topics and enables educators to teach the community many ways to improve upon their overall health through diet and exercise." At sites.psu.edu, July 2, 2015 Office Action p. 10.

9. CRICH (Centre for Research on Inner City Health) promotes an "action research centre" called the Well Living House, which focuses on "indigenous infant, child and family health and well-being." At www.stmichaelshospital.com, July 2, 2015 Office Action p. 13.

10. WELLth Learning Network outlines "15 first aid concepts applied to creating the well-living workplace." These concepts primarily relate to first aid and how

some of the principles of first aid can be applied in a workplace environment. At www.wellthblog.com, July 2, 2015 Office Action p. 15.[10]

This modern-day usage of the term "well-living" has more significance and probative value than the dictionary meaning in terms of the likely perception of consumers. While "well-living" in a somewhat archaic sense may mean living a moral or virtuous life, in its current sense it clearly means living a healthy life focused on diet, nutrition and physical fitness. The predominant idea conveyed by the evidence overall is that the term "well-living" describes a healthy or fit way of life. When the descriptive term "well living" is combined with the non-distinctive term "lab," the entire phrase WELL LIVING LAB conveys no more than the sum of its individual

---

[10] The latter two websites (nos. 9 & 10) are promoted by companies located in Canada. Applicant suggests that there exists something akin to a *per se* rule against considering use of a term on a foreign website to inform U.S. consumer perception. But it is settled that "[i]nformation originating on foreign websites or in foreign news publications that are accessible to the United States public may be relevant to discern United States consumer impression of a proposed mark." *Bayer*, 82 USPQ2d at 1835. We evaluate the probative value of foreign information sources on a case-by-case basis. *Id*. Various factors may inform the probative value of a foreign website in any given case, such as whether the website is in English (or has an optional English language version), and whether the nature of the goods or services makes it more or less likely that U.S. consumers will encounter foreign websites in the field in question. We find the websites of the Canadian companies here are probative of U.S. consumer understanding of the term "well living" in relation to Applicant's services. The websites are in English, are located at ".com" TLDs, and involve services that promote health and wellness. Potential consumers of Applicant's scientific research services and product testing services are likely to encounter the foreign websites as part of a search for companies that offer services related to the research, testing and development of products that are designed to improve one's health and well-being, particularly research that can be applied to indoor environments such as a workplace. *See In re Remacle*, 66 USPQ2d 1222, 1224 n.5 (TTAB 2002) (professionals in certain fields, such as medicine, engineering, computers and telecommunications likely to monitor developments in their fields without regard to national boundaries); *see also In re King Koil Licensing Co.,* 79 USPQ2d 1048, 1050 (TTAB 2006) (consumers may visit foreign web sites for informational purposes "when researching products they may be planning to purchase").

parts. It immediately informs consumers of Applicant's scientific research and product testing services about a feature or characteristic of the services, namely, that they involve research of products designed to improve a user's health and wellness conducted in a laboratory environment. Accordingly, Applicant's mark WELL LIVING LAB is merely descriptive of Applicant's services.

**Decision:** The refusal to register under Trademark Act Section 2(e)(1) is affirmed.