This Opinion is a
Precedent of the TTAB

Mailed: May 16, 2018

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Mueller Sports Medicine, Inc.*

_____

Serial No. 87209946

_____

Rick L. Abegglen, Esq. of Mueller Sports Medicine, Inc.

Barney Charlon, Trademark Examining Attorney, Law Office 104,
    Dayna Browne, Managing Attorney.

_____

Before Mermelstein, Bergsman and Gorowitz,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Mueller Sports Medicine, Inc. ("Applicant") seeks registration on the Principal

Register of the mark RECOIL (in standard characters) for the goods listed below:

> Tape and taping supplies for medical purposes, namely,
> medical cohesive tape, in International Class 5;
>
> Tape and taping supplies for athletic purposes, namely,
> athletic cohesive tape, in International Class 28.[1]

---

[1] Application Serial No. 87209946 was filed on October 20, 2016, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce. On July 5, 2017, Applicant filed an Amendment to Allege Use claiming first use anywhere and use in commerce since at least as early as July 1, 2017 for the goods in both classes.

The Trademark Examining Attorney refused registration of Applicant's mark under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that RECOIL, used in connection with medical and athletic cohesive tape, is merely descriptive of a characteristic of the tape, its elasticity, because RECOIL refers to the "property of being able to return to its original form when stretched."[2] In the alternative, the Trademark Examining Attorney refused to register Applicant's mark under the same section but on the ground that the mark is deceptively misdescriptive of the goods (*i.e.,* if RECOIL is not descriptive, then it is a misdescription of an attribute of the goods).[3]

After the Trademark Examining Attorney made the refusal final, Applicant appealed to this Board. We affirm the refusal to register.

## I.   Evidentiary Issue

When submitting a webpage, the Trademark Manual of Examining Procedure ("TMEP") instructs an examining attorney to include the URL of the website and the date the excerpt was accessed.

> When making Internet evidence part of the record, the examining attorney must both (1) provide complete information as to the date the evidence was published or accessed from the Internet, and its source (e.g., the complete URL address of the website), and (2) download and attach the evidence to the Office action. *See Safer Inc. v. OMS Invs. Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010).

---

[2] Trademark Examining Attorney's Brief (6 TTABVUE 4).

[3] *Id.*

TMEP § 710.01(b) (October 2017). *Cf. Edom Labs. Inc. v. Lichter,* 102 USPQ2d 1546, 1550 (TTAB 2012) (webpages inadmissible because they did not include the URL).

In his January 11, 2017 Office Action, the Trademark Examining Attorney submitted an excerpt purportedly from the Google Books website without including the URL, the date the excerpt was accessed, or the title and author of the book excerpted in the Google Books search result.[4] Nevertheless, in its July 6, 2017 Response to the Office Action, Applicant did not object to the submission of the Google Books Internet excerpt and discussed the probative value of that excerpt.[5]

In his July 31, 2017 Final Office Action, the Trademark Examining Attorney submitted, *inter alia,* excerpts from the Ultimate Performance 3d Taping Guide website (TSDR 6-7), the Authentic Kinesio website (TSDR 8-9), Google Books website (TSDR 12), and the Athletic Tape Info website (TSDR 17-18) without providing the URLs or the dates the webpages were accessed. In the body of the Office Action, the Trademark Examining Attorney did not refer to these excerpts. In its Appeal Brief, Applicant neither objected to the submission of these website excerpts as improper, nor discussed them.

The Board has stated that "it is preferable that material obtained from the Internet should be identified by the full address (url) for the webpage and the date it was downloaded, either by the information printed on the webpage itself, or by

---

[4] TSDR 12. References to the TSDR database are to the downloadable .pdf version.

In the body of the July 11, 2017 Office Action, the Trademark Examining Attorney stated the attached excerpt is from Google Books. (TSDR 2).

[5] TSDR 6.

providing this information in an Office action or an applicant's response." *In re Max Capital Grp. Ltd.,* 93 USPQ2d 1243, 1246 n.6 (TTAB 2010) (citing *In re Int'l Bus. Mach. Corp.,* 81 USPQ2d 1677, 1682 n.9 (TTAB 2006) (the Board considered webpages without web addresses because applicant did not object)). However, until *Safer Inc. v. OMS Inv. Inc.,* 94 USPQ2d 1031, 1039 (TTAB 2010), there was no requirement for the propounding party to include the web address when introducing a webpage in a Board proceeding. By analogy, the TMEP adopted the requirements identified in *Safer* for use by Examining Attorneys in *ex parte* proceedings.

Because there are no precedential cases regarding an examining attorney's failure to properly submit Internet evidence, we turn to an analogous situation for guidance.

> If the applicant, during the prosecution of the application, provided a listing of third-party registrations, without also submitting actual copies of the registrations, and the examining attorney did not object or otherwise advise the applicant that a listing is insufficient to make such registrations of record at a point when the applicant could cure the insufficiency, the examining attorney will be deemed to have waived any objection to the admissibility of the list.

Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 1207.03 (June 2017); *see also* TBMP § 1208.02. Accordingly, if an examining attorney fails to include the website URL and the date that the webpage was accessed but the applicant fails to lodge an objection on that ground, then the Board will consider the website for whatever probative value it may have.

In this case, because Applicant did not object to the Internet excerpts from the Ultimate Performance 3d Taping Guide website, the Authentic Kinesio website, the

Google Books websites, and the Athletic Tape Info, Applicant waived its objection to the submission of those websites.[6]

Moreover, in view of the TMEP's extension to examining attorneys of the requirements set forth in *Safer v. OMS* for the URL and date to be displayed on website excerpts, we further extend these requirements to both examining attorneys and applicants in *ex parte* proceedings. Similar to the submission of third-party registrations, Examining Attorneys have a responsibility to make sure that applicants properly submit Internet evidence. If the applicant's response includes Internet evidence without a URL or date it was printed, the examining attorney must object to the evidence in the first Office action following the response and advise the applicant as to the proper way to make the Internet evidence of record. Otherwise the Board may consider the objection to be waived. *Cf. In re ActiveVideo Networks, Inc.,* 111 USPQ2d 1581, 1594 n.40 (TTAB 2014) (objection waived where examining attorney, in a continuing refusal, failed to advise applicant that mere listing of third-party registrations was insufficient to make them of record); *In re City of Houston,* 101 USPQ2d 1534, 1536 (TTAB 2012) ("[T]he examining attorney's failure to advise applicant of the insufficiency of the list of registrations when it was proffered during

---

[6] The other evidence is sufficient to show that RECOIL in connection with tape and taping supplies for medical and athletic purposes is merely descriptive. Thus, our decision would not change even if we struck the websites without URLs.

The GOOGLE BOOKS Internet excerpts did not include the name of the book from which it was taken or the book's author. Besides including the URL and date the GOOGLE BOOKS Internet excerpt was accessed, to provide better context for the excerpt, the Trademark Examining Attorney should have included the front or cover page showing the book title and author's name and the page showing the copyright notice.

examination constituted a waiver of any objection to consideration of that list."); *In re 1st USA Realty Prof'ls,* 84 USPQ2d 1581, 1583 (TTAB 2007) (allowing evidence of a list of third-party registrations because the examining attorney did not advise applicant of the insufficiency of the list while there was still time to correct the mistake). If the applicant files an appeal, the Examining Attorney should continue the objection to the evidence in his or her appeal brief.

## II. Applicable law for determining whether a term is merely descriptive.

Section 2(e) of the Trademark Act prohibits registration on the Principal Register of "a mark which, (1) when used on or in connection with the goods of the applicant is merely descriptive . . . of them." 15 U.S.C. § 1052(e)(1). A term is "merely descriptive" within the meaning of Section 2(e)(1) if it "immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used." *In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (quoting *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1831 (Fed. Cir. 2007)). "On the other hand, if one must exercise mature thought or follow a multi-stage reasoning process in order to determine what product or service characteristics the term indicates, the term is suggestive rather than merely descriptive." *In re Tennis in the Round, Inc.*, 199 USPQ 496, 498 (TTAB 1978); *see also In re Shutts*, 217 USPQ 363, 364-65 (TTAB 1983); *In re Universal Water Sys., Inc.*, 209 USPQ 165, 166 (TTAB 1980).

Whether a mark is merely descriptive is determined in relation to the goods or services for which registration is sought, not in the abstract or on the basis of

guesswork, and we must consider "the context in which [the mark] is being used, and the possible significance that the term would have to the average purchaser of the goods [or services] because of the manner of its use or intended use." *In re Chamber of Commerce of the U.S.,* 102 USPQ2d at 1219 (quoting *In re Bayer AG*, 82 USPQ2d at 1831). In other words, we evaluate whether someone who knows what the goods or services are will understand the mark to convey information about them. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.,* 695 F.3d 1247, 103 USPQ2d 1753, 1757 (Fed. Cir. 2012); *In re Tower Tech Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002)).

### III. Whether RECOIL for medical and athletic cohesive tape is merely descriptive?

The word "Recoil" is defined, *inter alia*, as "to spring or come back, as in consequence of force of impact or the force of the discharge, as a firearm," and "to spring or come back; react (usually followed by *on* or *upon*): *Plots frequently recoil upon the plotters.*"[7] "Recoil" is synonymous with "Rebound."[8]

The Trademark Examining Attorney argues that "recoil" describes the capacity of Applicant's medical and athletic cohesive tape to return to its original form after

---

[7] *Dictionary.com* based on the Random House Dictionary (2017) attached to the January 11, 2017 Office Action (TSDR 4). *See also* Oxford Living Dictionaries (en.oxforddictionaries.com) (2018) ("rebound or spring back through force of impact or elasticity."). The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format. *In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd,* 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *Threshold.TV Inc. v. Metronome Enters. Inc.*, 96 USPQ2d 1031, 1038 n.14 (TTAB 2010); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006.

[8] *Dictionary.com* based on the Random House Dictionary (2017) attached to the January 11, 2017 Office Action (TSDR 5).

application and use.[9] In this regard, Applicant, on its packaging, describes its product as "Elastic Cohesive Tape." "Elastic" is defined, *inter alia,* as "capable of returning to its original length, shape, etc., after being stretched, deformed, compressed, or expanded," and "springing back or rebounding."[10] Thus, the Trademark Examining Attorney concludes that "the word RECOIL defines the very property – elasticity – that applicant uses in describing its product on its packaging."[11] *See In re N.C. Lottery*, 866 F.3d 1363, 123 USPQ2d 1707, 1710 (Fed. Cir. 2017 ("the TTAB did not err by considering the explanatory text of the specimens in the descriptiveness inquiry").

The Trademark Examining Attorney submitted excerpts from the websites listed below to show how the word "Recoil" is used by third parties in connection with athletic and medical tape to describe the ability of the tape to return to its original form (emphasis added):

---

[9] Trademark Examining Attorney's Brief (6 TTABVUE 4).

[10] *Dictionary.com* based on the Random House Dictionary (2018).

We decline to take judicial notice of the dictionary definition the Trademark Examining Attorney requested in his Appeal Brief (6 TTABVUE 4) because we cannot discern from the attached web pages or other evidence that the resource, *medical-dictionary.thefreedictionary.com*, exists in printed format. For example, the web pages attached to the brief do not indicate whether the definitions are derived from a particular dictionary. Thus, the Trademark Examining Attorney's citation to *In re Jimmy Moore LLC,* 119 USPQ2d 1764, 1768 (TTAB 2016), is inapposite because *Jimmy Moore* holds that the Board may take judicial notice of an online dictionary that is also available in printed form. The better practice would have been for the Trademark Examining Attorney to have submitted a copy of the definition during the prosecution of the application.

[11] Trademark Examining Attorney's Brief (6 TTABVUE 4).

- Musculoskeletal Key website (musculoskeletalkey.com) in the chapter titled "Taping in Sports."[12]

  > The elastic tapes may be either adhesive backed or adherent. Adhesive elastic tapes will normally stretch both longitudinally and transversely. Typically, this type of tape will **recoil** to 125% of its original length when initially stretched lengthwise. However, multiple stretching will cause the tape to fatigue.[13]

- Wikipedia (Wikipedia.org) entry for "Elastic therapeutic tape."[14]

  > The product is a type of thin, elastic cotton tape that can stretch up to 140% of its original length. As a result, if the tape is applied to a patient on a stretch greater than its normal length, it will **"recoil"** after being applied and therefore create a pulling force on the skin to which it has been applied. This elastic property allows much greater range of motion compared to traditional white athletic tape and can also be left on for long periods of time before reapplication.[15]

- The unidentified source listed on the Google Books website (no URL), discussed above, provides that "[t]he increased popularity of elastic 'therapeutic' taping in the sports arena has led to an ever growing variety of products with variations in the tape adhesive and the amount of elastic recoil."[16] This unidentified source lists different taping materials, including elastic tapes for which it states the following:

  > Dependent upon the percentage of elastic stretch to allow
  > for controlled movement in a joint and functional muscle

---

[12] January 11, 2017 Office Action (TSDR 8-9).

[13] January 11, 2017 Office Action (TSDR 9).

[14] January 11, 2017 Office Action (TSDR 10-11).

[15] January 11, 2017 Office Action (TSDR 11).

[16] January 11, 2017 Office Action (TSDR 12).

support; rated by percentage of elastic stretch or **recoil**. Increasing popularity of this method with athletes has led to development of a larger choice of products, some with higher elastic **recoil**. Caution should be exercised with these products because they are intended for the young healthy athlete. Higher **recoil** will increase shearing forces on the skin and may lead to blister formation or tissue injury.[17]

- Football Medicine website (footballmedicine.net)[18]

  Kinesio Taping in Sports: Does the Existing Evidence Match Your Clinical Practice?

  *       *       *

  Behaviour of the tape

  The **recoil** effect and its direction

  One of the most important effects of Kinesio Taping on skin is the **recoil** effect of the tape. It is hypothesized that, when tape is applied on the skin, the Kinesio Taping application is going to stretch/drag the tissue that stays under the end and base of the tape towards the anchor, as it is shown in Figure 6.[19]

---

[17] January 11, 2017 Office Action (TSDR 12).

[18] July 31, 2017 Office Action (TSDR 4-5).

[19] July 31, 2017 Office Action (TSDR 5).



Figure 6 – Tape application direction and recoil effect direction exemplification

- Authentic Kinesio website (no URL)[20]

  KINESIO TAPING

  KT1 & KT2 – Basic, Advanced Concepts
  and corrective Techniques

  Course program KT1

  *        *        *

  B. Tape Around the Muscle

  *        *        *

  4. Tape shrinkage **"recoil"** occurs in the opposite direction
  you tape; in other words toward the "anchor". …

  *        *        *

  * Tensions>50% are for Corrective Techniques and lose
  **recoil** effect.

---

[20] July 31, 2017 Office Action (TSDR 8-9).

- Step Up, Speak Out website (stepup-speakout.org)

  Standard Treatment of Lymphedema – Kinesio Taping

  The original *Kinesio Tape®* and the *Kinesio Taping Method®* were developed by Dr. Kenzo Kase a Japanese Chiropractor who trained in the United States. He initiated the concept in the early 1970's and began working to develop a specialized tape that could aid the body in healing itself. …

  \*     \*     \*

  When the body returns to resting position the **recoil** of the tape lifts the skin.[21]

- Collins Sports Medicine website (ecatalog.collinssports.com) advertising "Dynamic Tape, The Original Biomechanical Tape!" featuring "4-5 times the **recoil** force of Kinesio Tape."[22]

Thus, third parties use "Recoil" to identify or describe the rebound effect or elasticity of the medical or athletic tape (*e.g.,* "this type of tape will recoil to 125% of its original length," "if the tape is applied to a patient on a stretch greater than its normal length, it will 'recoil' after being applied," and "One of the most important effects of Kinesio Taping on skin is the recoil effect of the tape."). Similarly, when Applicant uses RECOIL in connection with medical or athletic cohesive tape, it directly conveys to consumers and users that the tape has elastic properties that permit it to return to its original length or somewhat close to the original length.

---

[21] July 31, 2017 Office Action (TSDR 10-11).

[22] July 13, 2017 Office Action (TSDR 13).

Thus, RECOIL used in connection with medical or athletic cohesive tape is merely descriptive of a feature or characteristic of the tape.

Applicant argues that the dictionary relied on by the Trademark Examining Attorney to define "recoil" has six definitions, of which the Trademark Examining Attorney relied upon only two, neither of which relates to elasticity. "Either of these meanings, or any of the other meanings, could be associated by the public with RECOIL when applied to Applicant's Goods."[23] According to Applicant, because RECOIL does not have one meaning, consumers must use a multi-stage reasoning process to associate RECOIL with a property of medical or athletic cohesive tape, and therefore, it is not merely descriptive.[24] However, the test is not whether someone encountering the mark alone could guess what the goods are. As noted above, we evaluate whether someone who knows what the goods are will understand the mark to convey information about them. *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.,* 103 USPQ2d at 1757. In this case, consumers of medical and athletic cohesive tape will understand the proposed mark RECOIL to immediately convey information regarding the ability of the product to rebound or return to its original length or close to it. In any event, "[i]t is well settled that so long as any one of the meanings of a term is descriptive, the term may be considered to be merely descriptive." *In re Chopper Indus.*, 222 USPQ 258, 259 (TTAB 1984); *see also, In re IP Carrier*

---

[23] Applicant's Brief, p. 8 (4 TTABVUE 9).

[24] Applicant's Brief, p. 9 (4 TTABVUE 10).

*Consulting Grp.*, 84 USPQ2d 1028, 1034 (TTAB 2007); *In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979).

Having found that Applicant's mark is merely descriptive of a feature or characteristic of the goods, we need not reach the alternative ground for refusal that Applicant's mark is deceptively misdescriptive.

**Decision**: The refusal to register Applicant's mark RECOIL is affirmed.