This Opinion is a
Precedent of the TTAB

Hearing: September 19, 2024                    Mailed: December 30, 2024

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*Hangzhou Mengku Technology Co., Ltd and Fuzhou Mengku Technology Co., Ltd*

*v.*

*Shanghai Zhenglang Technology Co., Ltd*

————

Opposition No. 91272143

————

Jigang Jin of Jin Law Firm, for Hangzhou Mengku Technology Co., Ltd and Fuzhou Mengku Technology Co., Ltd.

Rose Kautz and Rob Potter of Kilpatrick Townsend & Stockton LLP, for Shanghai Zhenglang Technology Co., Ltd.

————

Before Greenbaum, Thurmon, and Stanley,
  Administrative Trademark Judges.

Opinion by Stanley, Administrative Trademark Judge:

Applicant Shanghai Zhenglang Technology Co., Ltd ("Applicant") seeks registration on the Principal Register of the proposed mark  for the following goods in International Class 9:

Computer game programmes downloadable via the Internet; Computer game software downloadable from a global computer network; Downloadable computer game software; Downloadable computer game software for use on mobile and cellular phones; Downloadable computer programs for pre-recording sports games; Downloadable electronic game programs; Downloadable electronic game software for handheld electronic devices; Downloadable electronic game software for use on mobile and cellular phones, handheld computers; Downloadable game software; Downloadable mobile applications for booking taxis; Recorded computer application software for mobile phones, namely, software for use in electronic storage of data, for playing online games; Recorded computer game software; Recorded computer virtual reality game software; Downloadable computer game software for personal computers and home video game consoles.[1]

Hangzhou Mengku Technology Co., Ltd and Fuzhou Mengku Technology Co., Ltd (collectively, "Opposers") oppose registration on the ground that Applicant's proposed mark is merely descriptive of the identified goods under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1).[2]

---

[1] Application Serial No. 90371133 was filed on December 10, 2020 under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based on Applicant's allegation of use of the proposed mark in commerce. The application includes the following description of the mark: "The mark consists of 7 columns of cubes which contain two incomplete cubes with curved edges in the bottom left and right hand corners. These 7 columns contain tan cubes, and wedged within the middle three columns is a T shape comprised of brown shaded cubes with a brown outline. These figures sit against a black grid comprised of black cubes with brown outlines. There is another T shape that sits above the aforementioned brown T shape. This shape is comprised of tan cubes which are outlined in white and have what appears to be a blue glow around them. All of the aforementioned elements sit within a square that is shaded in a brown woodgrain design. The inner corners of the outline of the square are rounded." The application further includes the statement that "[t]he color(s) tan, brown, black, white and blue is/are claimed as a feature of the mark."

[2] Opposers' notice of opposition also included claims of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), non-ownership, and fraud. 1 TTABVUE. In an order dated January 10, 2023, the Board struck Opposers' non-ownership and fraud claims as insufficiently pleaded and granted summary judgment to Applicant, as conceded, on Opposer's likelihood of confusion claim, resulting in the dismissal of the likelihood of confusion claim with prejudice. 25 TTABVUE 3-6.

In its Answer, Applicant denied the salient allegations of the Notice of Opposition and purported to plead seven affirmative defenses, namely failure to state a claim, lack of standing, laches, estoppel, acquiescence, unclean hands, and lack of knowledge and willful intent.[3] Applicant did not pursue any affirmative defenses at trial or address them in its brief, thereby forfeiting or impliedly waiving them.[4] *See Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1753 n.6 (TTAB 2013), *aff'd*, 565 Fed. App'x 900 (Fed. Cir. 2014) (mem.); *Keystone Consol. Indus. v. Franklin Inv. Corp.*, 2024 USPQ2d 1425, 2024 TTAB LEXIS 290, at *5 n.10 (TTAB 2024) ("Affirmative defenses that were asserted in an answer but then not pursued at trial may be deemed impliedly waived, while affirmative defenses that were never asserted may be deemed forfeited.").

Opposers' Section 2(e)(1) claim is fully briefed, and an oral hearing was held on September 19, 2024. Opposers, as plaintiffs in the opposition proceeding, bear the

---

Citations in this opinion refer to TTABVUE, the Board's online docketing system. *Turdin v. Tribolite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014). Specifically, the number preceding TTABVUE corresponds to the docket entry number, and any numbers following TTABVUE refer to the page(s) of the docket entry where the cited materials appear.

This opinion cites to the Federal Reporter for decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals and other federal courts. For decisions of the Board, this opinion cites to the United States Patents Quarterly (USPQ), with pin cites as found in the LEXIS database. For Board decisions that lack USPQ pin cites in the LEXIS database, pin cites from the LEXIS database are provided. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 101.03 (2024) for acceptable citation forms to TTAB cases.

[3] Answer, 8 TTABVUE.

[4] We note the admonition of our primary reviewing court regarding the distinction between waiver and forfeiture. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted).

burden of establishing their entitlement to a statutory cause of action and substantive claim by a preponderance of the evidence. *See Jansen Enters. Inc. v. Rind*, 85 USPQ2d 1104, 1107 (TTAB 2007).

## I.     The Record

The record includes the pleadings and, pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), Applicant's application file. The parties also submitted:

### A.     Opposers' Main Trial Period

1.     Opposers' Notice of Reliance: Discovery Materials and Printed Publications (30 TTABVUE).

2.     Testimony Declaration with exhibits of Qianan Li, Chief Executive Officer of both Hangzhou Mengku Technology Co., Ltd and Fuzhou Mengku Technology Co., Ltd ("Li Declaration") (31 and 32 TTABVUE).[5]

### B.     Applicant's Main Trial Period

1.     Testimony Declaration with exhibits of Ruihua Ji, President of Applicant ("Ji Declaration") (38-40 and 42 TTABVUE).[6]

### C.     Opposers' Rebuttal Period

1.     Rebuttal Testimony Declaration with exhibits of Qianan Li ("Li Rebuttal Declaration") (51 TTABVUE).

## II.     Evidentiary Objections

### A.     Opposers' Evidentiary Objections

On November 16, 2023, Opposers filed a motion to strike (1) Paragraphs 8, 10, and 14 of the Ji Declaration and Exhibits 2, 4, and 6 thereto on the grounds of lack of

---

[5] 32 TTABVUE comprises a document titled "Bulky Exhibits." The "Bulky Exhibits" consist of videos filed on DVD, which are referenced in the Li Declaration.

[6] 42 TTABVUE comprises a document titled "Bulky Exhibits." The "Bulky Exhibits" consist of videos filed on DVD, which are referenced in the Ji Declaration.

foundation and hearsay; (2) Paragraphs 9, 25, and 26 of the Ji Declaration and Exhibits 15-46 thereto on the grounds of inadequate and untimely pretrial disclosures; and (3) Paragraphs 25 and 26 of the Ji Declaration and Exhibits 15-17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, and 45 thereto on the ground of relevance.[7] On December 28, 2023, the Board issued an order denying Opposers' motion to strike Paragraphs 9, 25, and 26 of the Ji Declaration and Exhibits 15-46 thereto and deferring consideration of Opposers' motion to strike as it pertained to Opposers' lack of foundation, hearsay, and relevance objections.[8] Opposers renewed the deferred objections in their trial brief.[9]

Exhibits 2, 4, and 6 to the Ji Declaration comprise Internet materials.[10] Opposers object to Exhibits 2, 4, and 6, and Mr. Ji's testimony in Paragraphs 8, 10, and 14 of the Ji Declaration referencing Exhibits 2, 4, and 6, on the basis that these exhibits and related testimony constitute hearsay, lack foundation, and are not reliable.[11] Internet materials accompanied by the requisite URL and date are admissible, but standing alone without accompanying testimony, they constitute hearsay, and we consider such materials only for what they show on their face, not the truth of their contents. *See* Fed. R. Evid. 802; Trademark Rule 2.122(e)(2), 37 C.F.R. § 2.122(e)(2); *Icon Health & Fitness, Inc. v. Eifit LLC*, 2022 USPQ2d 315, 2022 TTAB LEXIS 119,

---

[7] 46 TTABVUE.

[8] 50 TTABVUE.

[9] Opposers' Br., 52 TTABVUE 27-30.

[10] Exs. 2, 4, and 6 to the Ji Declaration, 38 TTABVUE 77-82, 85-123, 137-50.

[11] Opposers' Br., 52 TTABVUE 27-29.

at *17 (TTAB 2022) ("A URL and date appearing on the face of Internet documents submitted under cover of testimony … is sufficient to establish authentication."); *Optimal Chemical Inc. v. Srills LLC*, 2019 USPQ2d 338409, 2019 TTAB LEXIS 302, at *6 n.13 (TTAB 2019) (website printouts are hearsay and admissible under notice of reliance for what they show on their face but may not be relied upon for the truth of the matters asserted unless supported by testimony or other evidence); *Coach/Braunsdorf Affinity, Inc. v. 12 Interactive, LLC*, 110 USPQ2d 1458, 1467 n.30 (TTAB 2014) (Internet webpage evidence admissible only to show what has been printed and not for the truth of what has been printed).

Here, Mr. Ji does not provide sufficient testimony in Paragraphs 8, 10, and 14 of the Ji Declaration for us to consider Exhibits 2, 4, and 6 to the Ji Declaration for the truth of the matters asserted therein. Accordingly, we **sustain** Opposers' hearsay and foundation objections to Exhibits 2, 4, and 6 to the Ji Declaration and Mr. Ji's testimony in Paragraphs 8, 10, and 14 of the Ji Declaration referencing Exhibits 2, 4, and 6 because they constitute hearsay and lack foundation. See *Empresa Cubana Del Tabaco d.b.a. Cubatabaco v. Gen. Cigar Co.*, 2022 USPQ2d 1242, 2022 TTAB LEXIS 454, at *10 (TTAB 2022) (where "the parties seek to rely on the contents of the webpages for the truth of any assertion made therein, the statements in the websites are hearsay unless supported by testimony or other evidence"), civil action filed, No. 1:23-cv-00227 (E.D. Va. Feb. 20, 2023). However, we do not strike the exhibits or testimony from the record. The Internet materials are self-authenticating and will be considered for what they show on their face; we do not consider these Internet

materials for the truth of any assertion contained therein. *See, e.g.*, *Int'l Dairy Foods Ass'n v. Interprofession du Gruyère*, 2020 USPQ2d 10892, 2020 TTAB LEXIS 268, at *72 n.161 (TTAB 2020) ("We do not consider the substance of the media and Internet references to 'gruyere' for the truth of any assertion therein but rather as evidence of public exposure to use of the term generically. Applicants' hearsay objection is therefore moot."), *aff'd*, 575 F. Supp. 3d 627 (E.D. Va. 2021), *aff'd*, 61 F.4th 407 (4th Cir. 2023).

As to Opposers' objections to the reliability of Mr. Ji's testimony in Paragraphs 8, 10, and 14 of the Ji Declaration and Opposers' objections to the reliability of Exhibits 2, 4, and 6 to the Ji Declaration, which are referenced in Paragraphs 8, 10, and 14, these objections go to the weight rather than the admissibility of this evidence. Administrative Trademark Judges are not lay jurors who might easily be misled, confused, or prejudiced by irrelevant or unreliable evidence. *Cf. Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). "The Board is capable of weighing the relevance and strength or weakness of the objected-to ... evidence in this specific case." *Hunt Control Sys. Inc. v. Koninkijke Philips Elecs. N.V.*, 98 USPQ2d 1558, 1564 (TTAB 2011). Accordingly, Opposers' objections to the reliability of Mr. Ji's testimony in Paragraphs 8, 10, and 14 and Opposers' objections to the reliability of Exhibits 2, 4, and 6 to the Ji Declaration are **overruled**.

Opposers further object to portions of Paragraphs 25 and 26 of the Ji Declaration and Exhibits 15-17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, and 45 to the Ji

Declaration as irrelevant.[12] The objected-to exhibits comprise various third-party registrations submitted by Applicant purportedly to show that the USPTO routinely allows the registration of game application ("app") icons as trademarks.[13] Opposers' objections again go to the substance (i.e., to the weight and credibility) of Applicant's evidence, not the admissibility. We are capable of weighing the relevance of these objected-to third-party registrations and will accord this evidence whatever probative value is appropriate. Accordingly, we **overrule** Opposers' objections to Paragraphs 25 and 26 and Exhibits 15-17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, and 45 to the Ji Declaration.

### B. Applicant's Evidentiary Objections

On September 6, 2023, Applicant filed a motion to strike (1) Exhibit 1 to Opposers' Notice of Reliance on the ground that the date of the TSDR printout of involved application Serial No. 90371133 is not reasonably contemporaneous with the filing of the Notice of Reliance; (2) Exhibits 8-24 to Opposers' Notice of Reliance on the ground that Opposers' evidence of third-party use is inadmissible hearsay; (3) Exhibits 9-24 to Opposers' Notice of Reliance on the ground that the Internet printouts are not properly authenticated; and (4) Exhibits 18 and 23 to Opposers' Notice of Reliance

---

[12] Opposers' Br., 52 TTABVUE 29-30.

[13] Exs. 15-17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, and 45 to the Ji Declaration, 38 TTABVUE 446-594, 600-63, 669-738, 744-80, 786-816, 822-852; 40 TTABVUE 3-54, 60-105, 111-46, 152-85, 194-405, 415-57, 463-506, 512-40, 546-83. An "app icon" is an image that is shown to consumers alongside the app name and developer name, among other information, when a consumer searches for mobile apps in an app store. *See* Ji Declaration, 38 TTABVUE 3, ¶ 6. *See also id.* at 4-5, ¶ 9.

because they are not properly authenticated Internet search reports.[14] On November 8, 2023, the Board issued an order denying Applicant's motion to strike, except for the hearsay objections, for which the Board deferred consideration.[15] Applicant renewed the deferred objections in its trial brief and asserted additional objections based on relevance and lack of foundation.[16]

Exhibits 8-23 to Opposers' Notice of Reliance comprise Internet printouts purportedly showing third-party use of app icons that are allegedly similar to Applicant's proposed mark, and Exhibit 24 comprises an Internet printout purportedly showing the categorization of apps and games on the Google Play App Store.[17] As addressed above with respect to Opposers' objections to Applicant's Internet materials, Internet materials accompanied by the requisite URL and date are self-authenticating and admissible under notice of reliance; we consider the Internet materials for what they show on their face, not the truth of their contents. Unlike the Internet materials attached as Exhibits 2, 4, and 6 to the Ji Declaration, which could have been considered for the truth of the matters asserted therein if supported by appropriate testimony, the objected-to Internet materials here were attached to Opposer's Notice of Reliance, not a testimony declaration, and were not discussed in a testimony declaration. As such, the Internet materials attached to Opposer's Notice of Reliance were never going to be considered for the truth of the

---

[14] 37 TTABVUE.

[15] 45 TTABVUE.

[16] Applicant's Br., 53 TTABVUE 37-39.

[17] Opposers' Notice of Reliance ("NOR"), 30 TTABVUE 112-96.

matter asserted. *See* TBMP § 704.08(b) ("The probative value of Internet documents [admitted by notice of reliance] is limited. They can be used to demonstrate what the documents show on their face and may not be used to demonstrate the truth of what has been printed because they constitute hearsay."). Accordingly, Applicant's hearsay and foundation objections to Exhibits 8-24 to Opposers' Notice of Reliance are **moot**. Furthermore, Applicant's relevance objections go to the weight and credibility of Opposers' evidence, not the admissibility. We will accord this evidence whatever probative value we deem appropriate. In view thereof, Applicant's objection on the ground of relevance against Exhibits 8-24 to Opposers' Notice of Reliance is **overruled**.[18]

Applicant also objects to Section VI.E of Opposers' Trial Brief and Paragraphs 3-10 of the Li Rebuttal Declaration.[19] Section VI.E of Opposers' Trial Brief is titled "The Opposed Mark Has Not Gained Secondary Meaning"[20] and Paragraphs 3-10 of the Li Rebuttal Declaration comprise Mr. Li's testimony concerning Applicant's use of

---

[18] We note that Applicant again objects to Exhibits 18 and 23 to Opposers' Notice of Reliance on the basis that these documents comprise inadmissible Internet search reports (Applicant's Br., 53 TTABVUE 38-39), just, as it did in its September 6, 2023 motion to strike (37 TTABVUE 8). The Board denied Applicant's motion to strike Exhibits 18 and 23 to Opposers' Notice of Reliance in its November 8, 2023 order (45 TTABVUE 3), and Applicant did not timely seek reconsideration of that order. *See* Trademark Rule 2.127, 37 C.F.R. § 2.127(b) ("Any request for reconsideration or modification of an order or decision issued on a motion must be filed within one month from the date thereof."). In any event, we note that Exhibits 18 and 23 to Opposers' Notice of Reliance are not comprised of summaries of Internet search engine results. Rather, the exhibits are more in the nature of webpages from the Google Play App Store showing available games. We have considered this evidence consistent with the other Internet evidence in the record (i.e., for what is shown on their face, not the truth of their contents).

[19] Applicant's Br., 53 TTABVUE 39; *see also id.* at 21 n.3.

[20] Opposers' Br., 52 TTABVUE 22.

different app icons for its "Wood Block Puzzle 3D" game based on the language parameter used by the consumer and testimony rebutting Applicant's assertion concerning the number of times Applicant's "Wood Block Puzzle 3D" game has been downloaded.[21] Applicant objects on the basis that any alleged "secondary meaning" of Applicant's proposed mark and the dates of use or nonuse of Applicant's proposed mark are not at issue in this proceeding.[22] In response, Opposers acknowledge that Applicant "never asserted secondary meaning as affirmative defense in this case" but argue that Section VI.E of Opposers' Trial Brief and Paragraphs 3-10 of the Li Rebuttal Declaration should not be stricken because this evidence pertains to Applicant's evidence and argument concerning "alleged download numbers of [Applicant's "Wood Block Puzzle 3D"] game long after the filing date of the application and several Internet articles to support the alleged distinctiveness of Applicant's proposed mark."[23]

In their Notice of Opposition, Opposers did not plead a nonuse claim, and in its Answer, Applicant did not plead as an affirmative defense that its mark has acquired distinctiveness. Because Opposers may not pursue an unpleaded claim and Applicant may not rely on an unpleaded defense of acquired distinctiveness, we must determine whether the issues of nonuse or acquired distinctiveness were tried by implied consent under Fed. R. Civ. P. 15(b)(2), made applicable to Board proceedings by Trademark Rule 2.116(a), 37 C.F.R. § 2.116. Implied consent to the trial of an

---

[21] Li Rebuttal Decl. at ¶¶ 3-10, 51 TTABVUE 3-5.

[22] Applicant's Br., 53 TTABVUE 39.

[23] Opposers' Rebuttal Br., 54 TTABVUE 14.

unpleaded issue can be found only where the non-offering party (1) raised no objection to the introduction of evidence on the issue, and (2) was fairly apprised that the evidence was being offered in support of the issue. *See Hole in 1 Drinks, Inc. v. Lajtay*, 2020 TTAB LEXIS 9, at \*21 (TTAB 2020); *see also* TBMP § 507.03(b); *cf. Renaissance Rialto Inc. v. Boyd*, 107 USPQ2d 1083, 1084 n.3 (TTAB 2013) (although lack of acquired distinctiveness was not specifically pleaded in connection with the descriptiveness claim, the Board viewed the descriptiveness claim as including the allegation of lack of acquired distinctiveness, finding the issue had been tried by implied consent).

Here, Applicant objected to any evidence presented by Opposers that Applicant has not used Applicant's proposed mark in commerce. Accordingly, we find that a claim of nonuse has not been tried by implied consent. Likewise, Opposers raised the issue of acquired distinctiveness in their own brief, but Applicant maintains that the issue of acquired distinctiveness is not before us. In view thereof, we find that the issue of acquired distinctiveness has also not been tried by implied consent. Nevertheless, the issue of whether Applicant's proposed mark is inherently distinctive is before us, and evidence of distinctiveness may be relevant to either inherent distinctiveness or to acquired distinctiveness. In both cases we consider any evidence bearing on the relevant consumer's perception of the proposed mark. Accordingly, to the extent that Opposers' Section VI.E of Opposers' Trial Brief and Paragraphs 3-10 of the Li Rebuttal Declaration pertain to the alleged inherent distinctiveness of Applicant's proposed mark, we have considered Section VI.E of

Opposers' Trial Brief and Paragraphs 3-10 of the Li Rebuttal Decl. ¶¶ 3–10. In view thereof, Applicant's objection to Section VI.E of Opposers' Trial Brief and Paragraphs 3-10 of the Li Rebuttal Decl. ¶¶ 3–10 is **overruled**. We will accord these arguments and evidence whatever probative value we deem appropriate.

## III. The Parties

### A. Opposers

Opposers are in the business of developing and operating, among other things, mobile games made available for download to users.[24] Opposers have published more than fifteen mobile games on the Google Play App Store, including a mobile game featuring block puzzles.[25]

### B. Applicant

Applicant designs, develops, and distributes, among other things, mobile games.[26] Applicant offers and distributes its mobile games to U.S. consumers through, among other things, the Google Play App Store.[27] Applicant adopted the proposed mark

 to advertise, promote, and offer its mobile game titled "Wood Block

---

[24] Li Decl. at ¶¶ 2-3, 31 TTABVUE 2-3.

[25] *Id.* The Google Play App Store is a platform for developers of games to publish their games for download and for consumers to find and download various types of mobile games. Li Decl. at ¶3, 31 TTABVUE 3. Google allows developers of games to "tag" their games with pre-selected categories, and "Block puzzle" is a tag by which developers of games on the Google Play App Store may categorize their games. Li Decl. at ¶¶ 23-24, 31 TTABVUE 6; *see also* Ex. 17 to Li Decl., 31 TTABVUE 28-29.

[26] Ji Decl. at ¶ 3, 38 TTABVUE 3.

[27] Ji Decl. at ¶ 5, *id.*

Puzzle 3D" to consumers through the Google Play App Store.[28] Applicant's proposed mark is the "app icon" that is shown to consumers alongside the app title, developer, and other information in online search results, including in the Google Play App Store, and on the app listing page in the Google Play App Store.[29]

## IV.    Entitlement to a Statutory Cause of Action

As stated above, an opposer in an opposition proceeding before the Board must prove its entitlement to a statutory cause of action. *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014). Section 13 of the Trademark Act, 15 U.S.C. § 1063(a), states:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register, including the registration of any mark which would be likely to cause dilution by blurring or dilution by tarnishment under section 1125(c) of this title, may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor, within thirty days after the publication under subsection (a) of section 1062 of this title of the mark sought to be registered.

To establish entitlement to a statutory cause of action under Section 13, Opposers must demonstrate (1) that their claim falls within the zone of interests protected by the statute (i.e., they have a "real interest" in the outcome of the proceeding); and (2) damage proximately caused by the proposed registration (i.e., a reasonable basis for its belief in damage). *See Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067,

---

[28] Ji Decl. at ¶ 6, *id*.

[29] *Id*. The developer name listed, "Jewel Games Legend," is a public-facing alias used by Applicant for its mobile games. *Id*.; *see also* Ex. 1 to Ji Decl., 38 TTABVUE 36.

1070 (Fed. Cir. 2022) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129, 132 (2014)); *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303-07 (Fed. Cir. 2020); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 1373-74 (Fed. Cir. 2020); *Empresa*, 753 F.3d at 1275. Where there are multiple opposers, each opposer must plead and prove its own entitlement to a statutory cause of action. *See Int'l Dairy Foods Ass'n*, 2020 TTAB LEXIS 268, at *28; TBMP 303.06.

Where, as here, descriptiveness of the proposed mark is at issue, a plaintiff may prove its entitlement to a statutory cause of action by alleging that it is engaged in the sale of the same or related products or services (or that the product or service in question is within the normal expansion of plaintiff's business) and that the plaintiff has an interest in using the term at issue descriptively in its business. *Univ. of Ky. v. 40-0, LLC*, 2021 USPQ2d 253, 2021 TTAB LEXIS 68, at *11-21 (TTAB 2021) (opposer demonstrated entitlement to a statutory cause of action by establishing that it has a present or prospective interest in using the term 40-0); *Poly-Am., L.P. v. Ill. Tool Works Inc.*, 124 USPQ2d 1508, 1512 (TTAB 2017) (standing established by plaintiff showing that it is engaged in the manufacture or sale of the same or related goods and that the product in question is one which could be produced in the normal expansion of plaintiff's business), *aff'd*, No. 3:18-cv-00443-C (N.D. Tex. Oct. 29, 2019); *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d 1468, 1487 (TTAB 2017) (opposer's status as competitor establishes standing to oppose registration); *Kistner*

*Concrete Prods., Inc. v. Contech Arch Techs., Inc.*, 97 USPQ2d 1912, 1918 (TTAB 2011) (competitor in industry has a real interest in cancelling registration).

Both Opposers have shown that they develop and publish mobile games for download on the Google Play App Store, including a mobile game featuring block puzzles (i.e., the same mobile game type for which Applicant's proposed mark is used).[30] This evidence is sufficient to show that Opposers are competitors whose interests fall within the zone of interests protected by 15 U.S.C. §§ 1052(e)(1) and 1063 and Opposers have a reasonable belief in damage that is proximately caused by the prospective registration of Applicant's proposed mark. *Nature's Way Prods. Inc. v. Nature's Herbs Inc.*, 9 USPQ2d 2077, 2080 (TTAB 1989) ("In the present case, petitioner has demonstrated its standing by showing that it manufactures and sells products similar to those recited in respondent's registration and that, being a competitor of respondent, it is in a position to use the designation sought to be cancelled in a descriptive manner."). Opposers are not mere intermeddlers. *See, e.g.*, *Australian Therapeutic*, 2020 USPQ2d 10837, at *3.

Accordingly, Opposers have established their entitlement to a statutory cause of action to oppose registration of Applicant's proposed mark.

## V.      Merely Descriptive Claim

### A.      Legal Standard

We now turn to Opposers' claim of mere descriptiveness under Section 2(e)(1) of the Trademark Act. In the absence of acquired distinctiveness, Section 2(e)(1) of the

---

[30] Li Decl. at ¶ 2, 31 TTABVUE 2-3.

Trademark Act prohibits registration of a term on the Principal Register that, when used in connection with the goods or services identified in the registration, is merely descriptive of them. "A mark is merely descriptive if it immediately conveys information concerning a feature, quality, or characteristic of the goods or services for which registration is sought." *Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.*, 906 F.3d 965, 975 (Fed. Cir. 2018) (quoting *In re N.C. Lottery*, 866 F.3d 1363, 1367 (Fed. Cir. 2017)). A mark is suggestive, and not merely descriptive, if it "requires imagination, thought and perception to reach a conclusion as to the nature of the goods." *In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1515 (TTAB 2016) (quoting *StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1332-33 (Fed. Cir. 2014)); *see also In re Gyulay*, 820 F.2d 1216, 1217 (Fed. Cir. 1987). Suggestive marks, unlike merely descriptive terms, are inherently distinctive, and thus registrable on the Principal Register without proof of acquired distinctiveness. *See Nautilus Grp., Inc. v. Icon Health & Fitness, Inc.*, 372 F.3d 1330, 1340 (Fed. Cir. 2004).

Whether a particular mark is merely descriptive or suggestive must be determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which the mark is used, and the possible significance that the mark is likely to have to the average purchaser encountering the goods or services in the marketplace. *See In re Chamber of Commerce of the U.S.*, 675 F.3d 1297, 1300 (Fed. Cir. 2012); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1252 (Fed. Cir. 2012); *In re Abcor Dev. Corp.*, 588 F.2d

811, 814 (CCPA 1978); *In re Eng'g Sys. Corp.*, 2 USPQ2d 1075, 1076 (TTAB 1986); *In re Bright-Crest, Ltd.*, 204 USPQ 591, 593 (TTAB 1979). "Whether consumers could guess what the product is from consideration of the mark alone is not the test." *In re Am. Greetings Corp.*, 226 USPQ 365, 1985 TTAB LEXIS 97, at *3-4 (TTAB 1985). Rather, "the question is whether someone who knows what the goods and services are will understand the mark to convey information about them." *DuoProSS*, 695 F.3d at 1254 (quoting *In re Tower Tech, Inc.*, 64 USPQ2d 1314, 1316-17 (TTAB 2002)). In order to find a mark or image merely descriptive, it is not necessary that the term or image describe each feature of the goods or services, only that it describes a single, ingredient, quality, characteristic, function, feature, purpose or use of the goods or services. *Chamber of Commerce*, 675 F.3d at 1300.

Some say a photograph can be worth a thousand words, and trademark law recognizes that a pictorial representation, such as an illustration or photograph, may be considered just as descriptive as a word if it immediately conveys information as to the content, subject matter, feature, or characteristic of the goods or services. *In re Swatch Grp. Mgmt. Servs. AG*, 110 USPQ2d 1751, 1755-57 (TTAB 2014) (both the word Tourbillon and the design portion of the mark, which represents a tourbillon,[31] merely descriptive of applicant's goods), *aff'd* 599 Fed. Appx 959 (Fed. Cir. 1015); *see also In re Singer Mfg. Co.*, 255 F.2d 939, 1004 (CCPA 1958) ("It is, of course, true that a design consisting merely or essentially of a pictorial representation of the goods on

---

[31] "Tourbillon" is a term that describes a mechanism that is part of the escapement found inside a highly specialized watch. *See Swatch Grp.*, 110 USPQ2d at 1753-54.

which it is used is descriptive, and is not a valid trademark.") (citation omitted); *In re Pierce Arrow Motor Car Co.*, 55 F.2d 434 (CCPA 1932) (pictorial representation of the front end of an automobile enclosed within a hexagonal border found merely descriptive of automobiles); *In re Soc'y for Private and Commercial Earth Stations*, 226 USPQ 436 (TTAB 1985) (pictorial representation of a satellite dish held merely descriptive of an association promoting the interests of members of the earth station industry); *In re Underwater Connections, Inc.*, 221 USPQ 95, 95 (TTAB 1983) (pictorial representation of a compressed air gas tank held merely descriptive of travel-tour services involving underwater diving); *In re Eight Ball, Inc.*, 217 USPQ 1183, 1184 (TTAB 1983) (pictorial representation of a cue stick and eight ball found merely descriptive of billiard parlor services).

To be considered merely descriptive, the illustration or representation need not be completely accurate, realistic or true-to-life. *Swatch Grp.*, 110 USPQ2d at 1755 (citing *In re LRC Prods. Ltd.*, 223 USPQ 1250, 1252 (TTAB 1984)). "The critical question is whether a trademark is descriptive to prospective purchasers," *In re Wisconsin Tissue Mills*, 173 USPQ 319, 319 (TTAB 1972), and "[t]he ultimate guideline … is whether the design forthwith conveys an immediate idea of a feature of the goods and lacks any additional fanciful, arbitrary, or suggestive matter." *Swatch Grp.*, 110 USPQ2d at 1757 (citing *Chamber of Commerce*, 675 F.3d at 1300; *In re Gyulay*, 820 F.2d 1216). If, however, "the design suggests information about the goods in a way that requires imagination, thought, or perception to reach a conclusion as to the nature of the goods, it is not merely descriptive within the meaning of Section 2(e)(1) and may be

registered." *Swatch Grp.*, 110 USPQ2d at 1755. "In particular cases a design has been found to be not merely descriptive within the meaning of Section 2(e)(1) because it is 'a stylized presentation'; 'an arbitrary design which suggests the goods themselves to one familiar with [them]'; 'a fanciful ... design'; 'a highly schematic or fanciful representation' and 'not merely an illustration of [the goods] but ... sufficiently arbitrary and fanciful'; or 'stylized rather than realistic.'" *Id.* at 1755-56 (internal citations omitted).

### B.    Summary of the Parties' Arguments and Evidence

Supported by their Notice of Reliance and the Li Declaration and exhibits thereto, Opposers argue, among other things, that Applicant's proposed mark is merely descriptive because: (1) Applicant's proposed mark "consists merely of an illustration of Applicant's ["Wood Block Puzzle 3D"] Game and of block puzzle games more broadly";[32] (2) "prospective purchasers who know the goods are block puzzle games will understand that [Applicant's proposed mark] conveys knowledge of an ingredient, quality, characteristic, function, feature, purpose, or use of block puzzle games";[33] (3) numerous third-party games featuring block puzzles use app icons similar to Applicant's proposed mark;[34] and (4) "the blue glow around the edge of the T-shaped block piece and rounded corners of the board are insignificant and not

---

[32] Opposers' Br., 52 TTABVUE 13.

[33] *Id.* at 14.

[34] *Id.* at 17-18 (citing Exs. 10-17, 19, 21-22 to Opposers' NOR, 30 TTABVUE 122-49, 173-76, 181-88).

distinctive[,"] particularly in view of "[n]umerous block puzzle games on Google Play us[ing] similar glows like [Applicant's proposed mark]."[35]

Supported by the Ji Declaration and exhibits thereto, Applicant argues, among other things, that its mark is not merely descriptive because: (1) Applicant's proposed mark "is not a screenshot from Applicant's App, and does not depict any actual screen from Applicant's App";[36] (2) Opposers have not proven that Applicant's proposed mark is "merely an illustration" or "accurate pictorial representation" of Applicant's goods;[37] (3) Applicant's proposed mark is "a simplified, stylized design suggestive of, but not accurately depicting, Applicant's Goods";[38] (4) "Applicant's proposed mark contains additional fanciful elements that are not features of Applicant's App or accurate pictorial representations of Applicant's Goods[,]" including "the nearly-black background that emphasizes the contrasting pale wooden blocks, the stylized 'blue glow' around the central set of blocks suggesting movement and action, and the aesthetically pleasing configuration of blocks into symmetrical columns of descending height";[39] (5) "Opposers have not produced any evidence that competitors are using or need to use Applicant's mark to describe goods or services similar to those offered by Applicant, and Applicant is not aware of any such uses";[40] (6) "no image [of any

---

[35] *Id.* at 20-22 (citing Ex. 18 to Opposers' NOR, 30 TTABVUE 151-57).

[36] Applicant's Br., 53 TTABVUE 11 (citing Ji Decl. at ¶¶ 19-21, 38 TTABVUE 7 and Exs. 7-9 to the Ji Decl., 38 TTABVUE 151-213).

[37] *Id.* at 23-24 (citing Ji Decl. at ¶¶ 7, 15-21, 38 TTABVUE 4, 6-7; Exs. 7-9 to the Ji Decl., 38 TTABVUE 151-213).

[38] *Id.* at 24.

[39] *Id.* at 27

[40] *Id.* at 28.

third-party use] shows the same overall stylistic combination [of] elements as Applicant's Mark, including the nearly-black background, contrasting pale wooden blocks, seven-by-seven grid, 'blue glow,' and symmetrical arrangement of columns";[41] and (7) "the USPTO has allowed other app icons to register on the Principal Register without a disclaimer or showing of secondary meaning, even where the app icons contain imagery suggesting features of the app."[42]

In reply, Opposers argue, among other things, that: (1) "[a]lthough whether a design consists merely of an illustration of the goods is a proper test, it is not the ultimate test[;]" the Board must consider whether the design "conveys an immediate idea of a feature of the goods";[43] (2) Applicant's proposed mark "is not a fanciful or stylized design but a depiction of an essential feature of the block puzzle game;"[44] and (3) "[t]he clarity and detail of Applicant's Mark are such that the mark immediately conveys the singular idea of a block puzzle game."[45]

### C. Analysis

Consistent with *Swatch Grp.*, we consider "whether the design forthwith conveys an immediate idea of a feature of the goods and lacks any additional fanciful, arbitrary or suggestive matter." *Swatch Grp.*, 110 USPQ2d at 1757. As noted above,

---

[41] *Id.* at 29 (citing Li Decl. at ¶¶ 2-24, 31 TTABVUE 2-6; Exs. 2-17 of the Li Declaration, 31 TTABVUE 12-29).

[42] *Id.* at 34 (citing Ji Decl. at ¶¶ 9, 23-26, 38 TTABVUE 4, 8-19; Exs. 10-46 to the Ji Decl., 38 TTABVUE 214-852, 39 TTABVUE 1-434, 40 TTABVUE 1-588).

[43] Opposers' Rebuttal Br., 54 TTABVUE 6.

[44] *Id.* at 7.

[45] *Id.* at 12.

whether a mark is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use.

The relevant public in this case consists of consumers of downloadable and mobile games, including block puzzle games. Applicant's proposed mark and representative screenshots from Applicant's "Wood Block Puzzle 3D" game are provided below:

| Applicant's Proposed Mark | Screenshots from Applicant's "Wood Block Puzzle 3D" Game[46] |
|---|---|
|  | |

Considering the context in which Applicant's proposed mark is used and the average purchaser of the goods, we find that Opposers have shown that Applicant's proposed mark conveys an immediate idea of a feature of the goods, namely that Applicant's product is a block puzzle game, as described in the identification of goods. Applicant's identification of goods is unrestricted as to the type of downloadable or

---

[46] Ex. 7 to Ji Decl., 38 TTABVUE 164-66.

mobile computer game, and necessarily includes computer games of all sorts, including block puzzle games. *Cf. In re Linkvest S.A.*, 24 USPQ2d 1716 (TTAB 1992) (where registrant's goods are broadly identified as "computer programs recorded on magnetic disks," without any limitation as to the kind of programs or the field of use, it must be assumed that registrant's goods encompass all such computer programs, including computer programs of the type offered by applicant).

In addition, Opposers have demonstrated that Applicant's proposed mark "lacks any additional fanciful, arbitrary, or suggestive matter." *Swatch Grp.*, 110 USPQ2d at 1757.

Applicant identifies the following design elements as the "key features" of Applicant's proposed mark:

- A large rounded square shape surrounded by a square border with a wood grain pattern;

- A dark background with faint, barely noticeable lines in a seven-by-seven grid pattern;

- A middle ground featuring pale blocks with a faint wood-grain pattern in a symmetrical configuration of seven columns descending in height toward the center of the design, with the tallest columns on the far left and right and the shortest column in the middle;

- A separate set of blocks in a "T" shape floating in the foreground surrounded by a white highlight and ambient blue glow; and

- Transparent blocks forming an identical "T" shape below the floating blocks.[47]

---

[47] Applicant's Br., 53 TTABVUE 11.

Both Applicant's proposed mark and Applicant's "Wood Block Puzzle 3D" game itself feature pale block game pieces against a dark background with faint lines forming a grid of rows and columns behind the game pieces, with a brown border surrounding the gameplay area. Depending on the progression of active game pieces and how the user places those pieces, a user can create a similar "symmetrical configuration" of game pieces during game play as depicted in Applicant's proposed mark. Screenshots of actual game play of Applicant's "Wood Block Puzzle 3D" game submitted by Opposers reflect a similar near-symmetrical configuration:

| Applicant's Proposed Mark | Screenshots from Applicant's "Wood Block Puzzle 3D" Game[48] |
|---|---|
|  | |

Additionally, in one of the YouTube videos submitted into evidence showing video of a user playing Applicant's "Wood Block Puzzle 3D" game, when certain blocks are active, transparent blocks, outlined to form the identical square shape appear, just as in Applicant's proposed mark:

---

[48] Ex. 10 to Li Decl., 31 TTABVUE 13-14; *see also* Opposers Br., 52 TTABVUE 14.

| Applicant's Proposed Mark | Screenshots from YouTube Video of Applicant's "Wood Block Puzzle 3D" Game [49] |
|---|---|
|  | |

Although the above-described features appear in Applicant's "Wood Block Puzzle 3D" game, there is no evidence in the record showing that the blue glow depicted in Applicant's proposed mark appears in the game. As such, Applicant's proposed mark is not "merely … an illustration" of Applicant's "Wood Block Puzzle 3D" game. *Swatch Grp.*, 110 USPQ2d at 1755 ("A design which consists merely of an illustration of one's product is unregistrable under Section 2(e)(1)."). However, the record includes images of several third-party app icons appearing on the Google Play App Store, and these show common use of various glow colors to indicate movement of the active game piece. Evidence that a component is merely descriptive to the relevant purchasing public "may be obtained from any competent source," *In re Bayer AG*, 488 F.3d 960, 964 (Fed. Cir. 2007), including websites and third-party usage in connection with products or services similar or related to those at issue. *See N.C. Lottery*, 866 F.3d at

---

[49] Ex. 8 to Ji Decl., 38 TTABVUE 6, ¶ 17. The YouTube video, titled "Wood Block Puzzle 3D - Block Puzzle Game!" was submitted on DVD. 40 TTABVUE. Mr. Ji testified that "this video accurately depicts representative portions of Applicant's game." *Id.* The screenshots are captured at 1:45, 1:59, and 2:47 of the video.

1368; *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1378 (Fed. Cir. 2012); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1341-42 (Fed. Cir. 2001).

Representative examples of third-party uses of a glow surrounding the active game piece made of record by Opposers are depicted below, many of which also include a "symmetrical configuration" of blocks:

| Applicant's Proposed Mark | Representative Third-Party App Game Icons That Feature a Glow[50] |
|---|---|
|  | |

Applicant argues that these alleged third-party uses do not support Opposers' mere descriptiveness claim because the third parties are using their respective app

---

[50] Exs. 18 and 23 to Opposers' NOR, 30 TTABVUE 151-173, 190-193.

icons as trademarks (i.e., as source identifiers for their respective gaming apps).[51] Applicant, however, presented no evidence that any of the above-identified third-party app icons featuring a glow surrounding the active game piece act as source identifiers. Based on Applicant's argument, all app icons are trademarks merely by being app icons. Applicant's circular logic is not persuasive. Not every symbol adopted for the purpose of identifying and distinguishing a source accomplishes that goal. *See, e.g.*, *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 1322 (CCPA 1981) ("Even if appellee adopted and used BRIE NOUVEAU with the intent 'to identify its goods and distinguish them from those manufactured or sold by others'—i.e., adopted and intended to use BRIE NOUVEAU as a trademark—BRIE NOUVEAU must be distinctive … ."); *Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 828-29 (CCPA 1970) ("The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent Clairol has manifested here—that it identify its goods and distinguish them from those of others—does not necessarily mean that the slogan accomplishes that purpose in reality.").

Applicant further argues that, even though third parties may be using app icons with individual features similar to Applicant's proposed mark, none of the third parties are using, or need to use, "the same overall stylistic combination [of] elements" as Applicant's proposed mark.[52] The question before us, however, is not whether Applicant is the first and only user of this combination of elements. We must consider

---

[51] Applicant's Br., 53 TTABVUE 33.

[52] Applicant's Br., 53 TTABVUE 28-29.

whether the mark as a whole is merely descriptive. *See Fat Boys Water Sports*, 118 USPQ2d at 1514 ("The fact that Applicant may be the first or only user of a term does not render that term distinctive, if it otherwise meets the standard [for mere descriptiveness] set forth in *In re Gyulay*, *In re Chamber of Commerce*, and *DuoProSS*.").

Considering Applicant's proposed mark as a whole, we see no "appreciable distinctiveness" in the choice of the design elements used in creating the overall design of Applicant's proposed mark. *Swatch Grp.*, 110 USPQ2d at 1758. Applicant's design elements are either taken directly from the game (i.e., pale block game pieces against a dark background with faint lines forming a grid of rows and columns behind the game pieces, a brown border surrounding the gameplay area, and transparent blocks forming the identical shape below where the floating block appears), or are common elements used by third parties in a crowded field of block puzzle app icons (i.e., a glow of various colors around the active game piece and symmetrical placement of blocks). The minor changes in tint of the game pieces and the background of the gameplay area, the curved border instead of a square border, the symmetrical placement of blocks, and the choice to make the glow blue in Applicant's proposed mark are "hardly sufficient to render the design distinctively stylized or fanciful." *Id.* Overall, "none of the stylistic elements of [Applicant's proposed mark] is sufficiently distinctive to be considered fanciful, arbitrary, or suggestive." *Id.* In short, the combination of components does not create a unitary mark with a non-descriptive meaning.

These concepts are not new. Well before the *Swatch Grp.* decision, this Board found the following mark merely descriptive of billiard services.



In reaching this conclusion, the Board explained,

> While we concede that the subject matter for registration is technically not an accurate depiction of a cue stick and ball, nevertheless, there is no question that the commercial impression made by the designation is that of a cue stick and ball. We are of the view that the essence of the game of billiards is a cue stick, a number of balls and a billiard table. The pictorial representation of a cue stick and ball when used in connection with applicant's billiard parlor services immediately informs customers that applicant offers services in the nature of providing billiard games. Accordingly, we conclude that the central feature or characteristic of applicant's billiard parlor services is the availability of billiard games and that the pictorial representation of the cue stick and ball merely describes said feature or characteristic.

*Eight Ball*, 217 USPQ at 1184. The same logic applies here. Applicant's proposed mark "immediately informs customers" of the nature of the game Applicant offers.

Lastly, in its brief, Applicant identifies five registrations that it owns for app icons[53] as well as several third-party registrations for app icons,[54] and argues that

---

[53] Applicant Br., 53 TTABVUE 15 (citing Exs. 10-14 to the Ji Decl, 38 TTABVUE 214-445).

[54] *Id.* at 15-19 (citing Exs 15-16, 18, 20, 22, 24, 26, 30, 32, 36, 38, 42, 44, and 46 to the Ji Decl., 38 TTABVUE 446-536, 595-99, 664-88, 739-43, 781-85, 818-21; 40 TTABVUE 55-59, 106-10, 186-93, 406-14, 507-11, 541-45, 584-88).

the registration of these app icons support the registration of Applicant's proposed mark.[55] The vast majority of these registrations appear to be unrelated to block puzzle games. In any event, prior decisions and actions of other examining attorneys in registering other marks have little evidentiary value and are not binding on the USPTO or the Board. *Cf. In re Midwest Gaming & Entm't*, 106 USPQ2d 1163, 1165 n.3 (TTAB 2013) (citing *Nett Designs*, 236 F.3d at 1342). A mark that is merely descriptive does not become registrable simply because other seemingly similar marks appear on the register. *See Nett Designs*, 236 F.3d at 1342 (holding ULTIMATE BIKE RACK merely descriptive of "bicycle racks" despite the presence of "ultimate" without a disclaimer in other marks on the Principal Register); *In re Sun Microsystems Inc.*, 59 USPQ2d 1084, 1088 (TTAB 2001) (holding AGENTBEANS merely descriptive of computer software for use in software development and deployment where the Board found that changes in the vocabulary of the field reduced the relevance of third-party registrations). Ultimately, we must decide each case on its own facts. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 600 (Fed. Cir. 2016) (citing *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174 (Fed. Cir. 2009)). The third-party registrations for various app icons were decided on their own records and have minimal probative value. Any effort to draw an analogy between the third-party registrations and Applicant's proposed mark is far less meaningful than the detailed analysis we have given to the specific aspects of Applicant's proposed mark. *Swatch Grp.*, 110 USPQ2d at 1761.

---

[55] *Id.* at 34-35.

Taking into consideration all of the foregoing discussion, we find that consumers who know that Applicant's product is a block puzzle game will understand the mark to immediately convey information about it; that is, that the product is a downloadable and/or mobile computer block puzzle game as described in Applicant's identification of goods. Opposers have established by a preponderance of the evidence that Applicant's proposed mark as a whole is merely descriptive of Applicant's goods within the meaning of Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1).

**Decision:** The opposition is sustained, and registration to Applicant is refused.